James Lee JACKSON *v.* STATE of Arkansas

CR 04-854                                            214 S.W.3d 232

Supreme Court of Arkansas
Opinion delivered September 29, 2005

*William M. Howard, Jr.,* for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. James Lee Jackson appeals his convictions for first-degree murder, a terroristic act, and possession of firearms by certain persons. Jackson asserts that there was insufficient evidence to submit the issue of his guilt to the jury, and that the circuit court erred in denying his motion for mistrial in which he alleged that he was denied a fair trial as a consequence of communication between a juror and the murder victim's family. We find no error and affirm.

*Facts*

In the early morning hours of August 3, 2003, Katina Kay Carter suffered a gunshot wound to the back while standing in the parking lot at Hamp's nightclub. The bullet pierced her spine and severed her aorta. The injury resulted in severe internal bleeding and her death. Jackson was charged by felony information with the first-degree murder of Carter, a terroristic act, and possession of firearms by certain persons.

Dr. Stephan A. Erickson, an associate State Medical Examiner, testified that he removed a single .38 caliber bullet from Carter. The State's firearms and toolmark expert substantiated that the bullet removed from Carter was a .38 caliber bullet. While Carter was killed by a .38 caliber bullet, Chicot County criminal investigator Edward Gilbert testified that seven .40 caliber spent casings were retrieved from the Hamp's parking lot. Thirty-eight caliber casings were not retrieved from the parking lot; however, the evidence showed that Jackson had a revolver that night which would not have automatically ejected casings onto the ground. There was no evidence of how or when the .40 caliber casings came to be on the lot.

Gilbert located the vehicle Jackson rode in to Hamp's and from it seized a Crown Royal bag containing nine .38 caliber hollow point cartridges. He also found one .38 caliber spent casing in the vehicle. Jackson submitted to an interview with Gilbert and told him that he had a .38 caliber revolver at Hamp's that night, but when the altercation commenced in the parking lot, people brought out guns, and he was grazed by a bullet. He stated that he

dropped his revolver after firing three or more shots, and that he left the revolver at Hamp's. No firearm was located or identified as the murder weapon in this case.

Tony Brisco testified that he saw Jackson with a .38 caliber chrome revolver in the car on their way to Hamp's the night Carter was killed. According to Brisco, Jackson got into a fight in the club, and then he, along with others, went outside where Jackson retrieved the revolver and fired five to six rounds toward where Carter and others were standing. Brisco described the shots Jackson fired as "pretty fast." He also testified that he did not see Carter hit by a bullet, but that he was unaware of any other shots being fired that night.

Kevin Dewayne Jordan testified that following a fight on the dance floor with Cantrel Pace, Jackson went outside with some friends and was followed shortly by Pace and his friends. Jordan stated that he also went outside where he saw Jackson behind some vehicles firing a chrome revolver. According to Jordan, Jackson fired five or six shots in close succession toward where Carter was standing. Jordan did not see Carter as she was shot, but he stated that he heard no gunshots other than Jackson's.

Clinton Hampton testified that he owned Hamp's and that on August 3, 2003, a fight broke out. He stated that when he tried to break it up they all went outside. According to Hampton, he went outside because he tries to control what goes on in his parking lot. He retrieved a pistol and shotgun from his car and saw Carter fall as a volley of shots was fired. Hampton testified that he saw that the shots came from near a car, and he proceeded there to stop those who got in the car from leaving. He also testified that the volley consisted of multiple shots fired in a burst and that bullets hit his nightclub. According to Hampton, there were about twenty-five to thirty people in the parking lot at the time of the shooting.

Aquontis Pitts testified that he was present at Hamp's when Carter was shot, and that after a fight with Jackson inside the club, he and others, including Carter and Jackson, went outside. Pitts then testified that he saw Jackson firing a chrome pistol in their direction. Pitt testified that Jackson fired multiple shots rapid fire and that no one else fired shots.

Kenny Miles testified that once the fight started inside the club, people were getting guns out of coolers that they had brought inside. He also testified that about twelve people had guns

outside, and that although multiple shots were fired in quick succession, Jackson was not the shooter who hit Carter because he had his pistol pointed over his head and would have only hit the nightclub had he fired. According to Miles, several people were shooting.

Marcus Owens testified that he traveled to the club with Jackson and that Jackson had a gun. He asserted, however, that it was Brisco who got the gun from the car during the altercation in the parking lot. Owens stated that Jackson ended up with the gun and fired shots, but that other shots were fired as well.

*Directed-Verdict Motion*

■■ Jackson argues that the circuit court erred in refusing to grant his directed-verdict motion. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *George v. State*, 356 Ark. 345, 151 S.W.3d 770 (2004). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When reviewing a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

Jackson alleges that in submitting this case to the jury, the circuit court forced the jury to rely on speculation and conjecture in reaching its decision. Jackson alleges more specifically that there is a lack of a "direct link" between him and the bullet that killed Carter because based on witness testimony, there were multiple gunshots and up to twelve people with guns in the parking lot at the time of the murder. Jackson notes that Brisco testified, "Yes, I remember saying I heard one shot while I was getting beat up. I don't know who the shot came from . . . Yes, it's possible that another gun was being fired at that point." Jackson also quotes Miles's testimony that ". . . people were shooting at us. Everybody was shooting."

However, Brisco also testified that Jackson fired five to six rounds in the direction of the club. Jordan testified that he saw Jackson behind some vehicles firing a chrome revolver. According to Jordan and Brisco, Jackson fired five or six shots in close succession toward where Carter was standing. Hampton testified that he saw Carter fall as a volley of shots was fired, that the shots

came from a car, and that his nightclub was struck by bullets. Pitts testified that he saw Jackson firing a chrome pistol in their direction, that Jackson fired multiple shots in rapid fire, and that no one else fired shots.

In this case, the State relied entirely upon circumstantial evidence. In other words, the State provided no witness who testified he or she saw Jackson fire the shot that killed Carter. Circumstantial evidence is evidence of circumstances from which a fact may be inferred. *Mills v. State,* 351 Ark. 523, 95 S.W.3d 796 (2003). Direct evidence is evidence that proves a fact without resort to inference, when for example, it is proved by witnesses who testify to what they saw, heard, or experienced. *Gamble v. State,* 351 Ark. 541, 95 S.W.3d 755 (2003).

Guilt can be established without eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *Gregory v. State,* 341 Ark. 243, 15 S.W.3d 690 (2000). However, regardless of whether evidence is direct or circumstantial, it must meet the requirements of substantiality. *Id.* It must force the fact-finder to reach a conclusion one way or the other without resort to speculation or conjecture. *Gamble, supra.* Additionally, where circumstantial evidence alone is relied upon, it must exclude every other reasonable hypothesis than that of guilt of the accused or it does not rise to the required substantial evidence. *Gregory, supra.*

In the case before us, there is no question that there is conflicting testimony concerning the number of people in the parking lot, the number of people who had guns, and the number of people who fired guns. In addition, there is conflicting testimony concerning where Carter was standing when she was shot. However, there was witness testimony that a volley of shots was fired by Jackson at the group where Carter was standing, and that Jackson was the only shooter. Carter was hit by a single bullet and died.

The jury may resolve questions of conflicting testimony, and inconsistent evidence, and may choose to believe the State's account of the facts rather than the defendant's. *Harper v. State,* 359 Ark. 142, 194 S.W.3d 730 (2004). The credibility of witnesses is an issue for the jury and not this court. *Id.* The jury clearly believed the account given by the State's witnesses that Jackson fired the only shots and fired toward the group where Carter was standing and toward the nightclub. This conclusion,

based on substantial circumstantial evidence that Jackson fired the shot that killed Carter and the shots that hit the club, excludes the only other reasonable hypothesis than that of guilt, that another fired the shots. Further, with respect to the terroristic-act charge, we note that Jackson asserts that "[t]here is simply no proof that any of the bullets that struck the club were fired by the Appellant. It is impossible to determine if any of the damage sustained by the club was attributable to the Appellant." As already discussed, the jury was presented with substantial evidence and was free to believe or disbelieve the testimony that only Jackson fired a weapon. While Jackson asserts later in his brief that there was not sufficient proof on all the elements of the charges, including the terroristic-act charge, he offers no argument on any element except that Jackson was not the person who fired the shots. Our analysis is thus limited to this single element[1] because no other argument or cite to authority was offered by Jackson. *Polston v. State*, 360 Ark. 317, 201 S.W.3d 406 (2005). Substantial evidence supports the jury's verdict, and the circuit court did not err in denying the directed-verdict motion and submitting the question of guilt to the jury.

### Mistrial

Jackson asserts that after the jury had determined guilt on first-degree murder and a terroristic act, but before the jury considered the issue of possession of a firearm by a felon, a juror mouthed something to the victim's family upon entering the courtroom. This was brought to defense counsel's attention by Annie Jenkins, Jackson's mother. Jenkins identified juror Shanekia Brown as the juror who mouthed to the victim's family. The circuit court questioned those who were in the courtroom at the time the event was supposed to have occurred and questioned juror Brown after the trial was completed. No one testified that Brown mouthed anything except Jenkins.

However, Jackson argues that given the seriousness of the charges and penalties, the circuit court abused its discretion in

---

[1] We note that Jackson argues in his brief that self-defense could have been the motive for shooting the revolver. That argument goes to intent on his terroristic-act charge; however, as Jackson states in his brief, this "was not argued by the defense attorney. ..." Arguments raised for the first time on appeal will not be considered. *Dowty v. State*, 363 Ark. 1, 210 S.W.2d 850 (2005).

denying the motion for mistrial. A mistrial is not to be granted unless there is an error so prejudicial that justice cannot be served by continuing with the trial or when fundamental fairness has been compromised. *King v. State*, 361 Ark. 402, 206 S.W.2d 883 (2005). Jackson has not shown any prejudice at all. There is no evidence of misconduct other than Jenkins saying that Brown mouthed something to the victim's family. We do not know what was allegedly said or whether if anything was mouthed that it even related to the trial.

■ The moving party bears the burden of proving prejudice. *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002). Here, there is a question of whether there was communication between a juror and the victim's family. Jenkins made the assertion and no other person questioned saw the alleged communication. Even assuming communication took place, this court will not presume prejudice. *Id.* Whether prejudice occurred is also a matter for the sound discretion of the trial court. *Id.* There was no abuse of discretion in denying the motion for mistrial.

### *4-3(h)*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for adverse rulings objected to by Jackson but not argued on appeal, and no prejudicial error is found.

Affirmed.