2009 Ark. 453

**Marcha Jarmane SMITH, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–106.**

Supreme Court of Arkansas.

Oct. 1, 2009.

Butler & Green, P.A., by: Chad M. Green, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice.

Marcha Smith appeals his conviction for capital murder and sentence of life without parole. He asserts five errors on appeal. We affirm the conviction and sentence. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2).

On April 7, 2007, Smith called his girlfriend Jasmine Martin several times and asked her if he could care for her two-year-old daughter LB that evening. Martin agreed. At about seven p.m., Smith picked up LB from Martin at a baby shower she was attending. Smith promised Martin he would keep LB for a few hours and then return her. When the baby shower ended at about ten p.m., Martin called Smith, asking that he return LB. He told Martin that he was getting a cousin to bring him to Martin's house and would return LB shortly. Smith did not show up, so Martin again called him, and he told her he would be there soon. Smith had not arrived by midnight, so Martin called him yet again. This time, Smith told her that LB was asleep, and he refused to wake her to talk to Martin. Calls continued until about four o'clock in the morning.

At that time, Smith again promised to return LB, but he did not do so. At about seven a.m., Martin received a call from Smith's cousin Toni who promised to pick LB up and bring her home on the way to church. However, Toni called back shortly afterward to tell Martin that LB had stopped breathing and was being taken to the hospital.

Jefferson County Regional Medical Center (JCRMC) emergency room physician Dr. John Skowronski provided care to LB from her arrival until she was transferred to Arkansas Children's Hospital in Little Rock. LB came under JCRMC's care at nine thirty-three a.m. At that time, she was in full cardiorespiratory arrest, her pupils were dilated and fixed, and she was limp and unconscious. She was resuscitated and put on a ventilator. In the course of an examination, Dr. Skowronski observed that LB had multiple bruises on her legs, some of which were so large that they extended up onto her abdominal wall. She also had blood under the skin around her eyes. Dr. Skowronski concluded upon examination that she had abdominal distension caused by blood or other fluid in her abdomen. Upon further examination, and prior to inserting a catheter, Dr. Skowronski noted a tear in LB's vagina.

David DeFoor, a detective with the Pine Bluff Police Department, was working off-duty at JCRMC when LB arrived. DeFoor asked Smith what had happened. Smith reported └₃to DeFoor that he was about to give LB a bath in preparation to take her to church when she urinated on herself, and he "popped her a couple of times on the backside." Smith stated that LB took off running, slipped, fell, and hit the back of her head. Smith further told DeFoor that when he put LB in the tub for her bath, she passed out, and he brought her to the hospital because she was not breathing. Smith later added to his story that LB had passed out the night before and also stopped breathing for a few seconds but recovered and seemed fine. He later denied having said this to DeFoor.

LB was transferred to Children's Hospital later that day, but passed away the next day. The autopsy revealed a number of recent injuries associated with her death. She had an abrasion to her left cheek, bruising to her forehead, two small abrasions beneath her chin, a small abrasion to her scalp, and a small abrasion to her right back. Additional abrasions were found on her back. Two patterned abrasions indicated that she was struck with an object that left an impression. Both of LB's thighs were almost completely encircled in contusions of ten to eleven inches. Additionally, she suffered blunt injury to her torso that caused hemorrhage and damage to her pancreas. Most significantly, LB suffered a fracture to the back of her head that was caused by her head hitting or being hit by a solid object at an accelerated speed. The injury was characterized by the medical examiner as "severe." The blow caused her brain to shift within her skull. Hemorrhaging was present within her skull as a consequence of the trauma and fracture. She also suffered hemorrhages to the back of └₄both eyes, likely caused by the blow she suffered to her skull.

Medical Examiner Dr. Adam Craig testified that LB's death was caused by multiple blunt force injuries. He opined that the injuries to the head would have caused LB immediate unconsciousness, although she might have then regained consciousness for a time. Ultimately, her injuries would have caused swelling within her skull that would have in turn caused cardiorespiratory arrest. According to Dr. Craig, the swelling of her brain finally shut down respiration, and that was a cause of

death. He compared the force causing the injury to her falling two or three stories and opined that it was not an injury the child could have caused herself by slipping and falling.

Martin testified that she had bathed LB the day before she let Smith take her, and that when she gave LB to Smith, she had no bruises of any form anywhere, that she had no bumps or injuries of any form, and that she had no vaginal discharge or bleeding. Martin's mother, Cynthia Johnson, testified that Martin and LB lived with her and that she had seen LB before the baby shower. According to Johnson, LB had no injuries or bleeding; however, she did testify that on a prior occasion when LB had stayed with Smith, she suffered a cigarette burn behind one ear. Smith's brother Brian Stovall testified that he and Smith were alone with LB at Smith's house. According to Stovall, he saw LB when she arrived and throughout the evening. However, after she was put to bed, aside from peeking in on her about ten p.m., he did not see her until he was awakened the next morning by Smith in a panic that she was ill. According to Stovall, LB was fine when put to bed. He testified that he heard nothing during the night.

Smith testified that to his knowledge, LB was okay when he picked her up from Martin. He stated that she hit her lip on a door that night and suffered some bleeding that he wiped off with his T-shirt, an injury that was not found in her examination and autopsy. According to Smith, he put her to bed and awoke when she needed to use the bathroom around five a.m. Smith reported that he took her to the bathroom, but she dawdled, and he returned to sit on the bed, where he fell asleep. He next was aware of her at seven-thirty a.m. when he awoke and found her asleep on the couch with the front door cracked open. Smith stated in his testimony that he checked on her at that time and she was sleepy, so he put her back to bed where she remained for about ten minutes. According to Smith, after ten minutes, she got up and came into the kitchen. He testified that she urinated on the floor, and he "spanked her on the butt twice" while telling her to go to the bathroom. Smith stated that in response, she started running, ran around the table, and slipped and hit the back of her head. According to Smith, she did not cry after hitting her head, and he put her in the tub while he brushed his hair. Again according to Smith, LB "leaned back against the back of the tub and took a deep breath and her head dropped." He reported that she was not responsive, so he removed her from the tub, took her to the living room and could not find a pulse. He stated that he then woke up his brother, and they got neighbor Sylvia Jones who helped him transport LB to the hospital.

Police seized physical evidence at the home, including flowered panties found on the couch and a bloody tissue found in a bathroom trash can. Further, the clothing Smith wore to the hospital was seized.

### Sufficiency of the Evidence

For his first point on appeal, Smith asserts that the circuit court erred in denying his motion for a directed verdict. A directed-verdict motion is a challenge to the sufficiency of the evidence. *Flowers v. State,* 373 Ark. 119, 121, 282 S.W.3d 790, 792 (2008). A challenge to the sufficiency of the evidence asserts that the verdict was not supported by substantial evidence. *Id.* at 121, 282 S.W.3d at 792. Substantial evidence is evidence of sufficient force and character that without resorting to speculation and conjecture compels with reasonable certainty a conclusion one way or the other. *Id.* We review the

evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.*

Smith is accused of causing the death of a person fourteen years of age or younger under circumstances manifesting extreme indifference to the value of human life. *See* Ark.Code Ann. § 5–10–101(a)(9)(A) (Supp.2005). He is accused of knowingly battering two-year-old LB so severely that she died. No witness the State presented saw the events that injured LB; therefore, the State relied solely upon circumstantial evidence.

Circumstantial evidence is evidence of circumstances from which a fact may be inferred. *Jackson v. State,* 363 Ark. 311, 316, 214 S.W.3d 232, 235 (2005). Direct evidence is evidence that proves a fact without resort to inference, when for example, it is proved by witnesses who testify to what they saw, heard, or experienced. *Id.*

Guilt in a criminal case can be established without eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *Id.* at 316, 214 S.W.3d at 236. However, regardless of whether evidence is direct or circumstantial, it must meet the requirements of substantiality. *Id.* It must force the fact finder to reach a conclusion one way or the other without resort to speculation or conjecture. *Id.* Additionally, where circumstantial evidence alone is relied upon, it must exclude every other reasonable hypothesis than that of guilt of the accused or it does not rise to the required substantial evidence. *Id.* Where the evidence is substantial, it is the jury's duty to decide whether the circumstantial evidence offered to prove guilt excludes every other reasonable hypothesis consistent with innocence. *Sales v. State,* 374 Ark. 222, 228, 289 S.W.3d 423, 428 (2008).

According to the testimony of Stovall, Smith, Martin, and Johnson, LB was fine when Smith picked her up that evening. Further, according to both Smith's and Stovall's testimony, LB was fine that evening up to and including the time she was put to bed. Again according to both Stovall and Smith, only Smith had contact and control over LB during the night. Finally, and again according to both Stovall and Smith, only Smith had contact and control over LB from the time she awoke the next morning until she stopped breathing and Smith woke Stovall up to help get LB to the hospital. Smith testified that LB was fine when she awoke. Thus, based on the evidence presented, LB was fine when she awoke the next morning; therefore, the injuries presented at the hospital at nine thirty-three a.m. had to have been sustained after LB awoke and while she was in the sole custody and control of Smith. His explanation for the injuries was that LB slipped, fell, and struck her head on the floor, but medical testimony declared this explanation implausible. He could not explain the origin of her many other injuries. Thus, the circumstantial evidence points only to Smith. He was the only person who had contact with and the opportunity to injure LB at the time the injuries were sustained. The circumstantial evidence excludes every other reasonable hypothesis than that of guilt of Smith. *See, e.g., Atkins v. State,* 310 Ark. 295, 301, 836 S.W.2d 367, 371 (1992) ("it is undisputed Atkins was left alone with C that morning"). Thus, the circumstantial evidence presented by the State constitutes substantial evidence supporting the finding of guilt. The finder of fact was not left to speculation and conjecture in deciding what caused LB's injuries.

### Admission of Evidence of Prior Felony Conviction

For his second point on appeal, Smith asserts that the circuit court erred

in admitting evidence of a prior felony conviction for aggravated assault under Arkansas Rule of Evidence 609. "Evidence of prior criminal convictions is not admissible to bolster the prosecution's case by showing that the accused is a bad person but is limited for the purpose of discrediting the witness's testimony." *Henry v. State,* 278 Ark. 478, 489, 647 S.W.2d 419, 426 (1983). In the present case, there was no direct evidence of how the victim suffered the injuries that caused her death. The circumstantial evidence pointed to Smith, who was alone with LB when the injuries allegedly occurred. He asserted that she injured herself when she slipped, a cause directly refuted by the medical examiner. Thus, Smith's credibility was a critical issue in this case, and his prior conviction was relevant to the purpose of attacking his credibility.

■ Smith moved in limine to exclude the reference to the 2006 felony conviction for aggravated assault, asserting that the conviction was inadmissible because it is not a crime involving dishonesty. Smith misreads Rule 609. Rule 609(a)(1) provides that convictions for crimes where the punishment is death or imprisonment in excess of one year may be admissible, and Rule 609(a)(2) provides that any convictions involving dishonesty or false statements may be admissible regardless of the

punishment that is imposed. Thus, felony convictions where punishment is imprisonment for more than one year or death are admissible to impeach credibility, but where the punishment is less than one year, the conviction is inadmissible unless it involved honesty or false statements.[1] The circuit court did not err in finding that the felony conviction was admissible under Rule 609(a)(1).

■ Smith also asserts that even if the evidence was admissible, the court abused its discretion in admitting the evidence because the probative value of the conviction was outweighed by the prejudicial harm. A court commits an abuse of discretion when it improvidently exercises its discretion, for example, when discretion is exercised thoughtlessly and without due consideration. *Williams v. State,* 374 Ark. 282, 290, 287 S.W.3d 559, 565 (2008). Smith's veracity for truth was at issue, and we find no abuse of discretion in allowing admission of his prior conviction for the purpose of attacking his credibility.[2]

### Mistrial

■ Smith next asserts that the circuit court erred in refusing to declare a mistrial when the State in opening statement referred to Jones's testimony that "he's trying to get LB to wake up, and that he says he can't go back to jail." Smith

1. Smith was convicted of aggravated assault under Arkansas Code Annotated Section 5-13-204 (Supp.2005). The conviction carried a penalty of up to six years' imprisonment. Ark.Code Ann. § 5-4-401(5) (Repl.1997). *See also Razorback Cab of Fort Smith, Inc. v. Lingo,* 304 Ark. 323, 328, 802 S.W.2d 444, 447 (1991) ("Assuming the conviction to have been punishable by imprisonment for less than a year, it would not be useable for impeachment unless it involved dishonesty or false statement.").

2. While the circuit court denied Smith's motion in limine, the State did not introduce the

evidence of Smith's prior aggravated assault conviction. Rather, Smith himself testified regarding the prior conviction during his direct examination. The State does not argue that Smith, as a result, waived the right to appeal this issue, but we take the opportunity to note that this court has previously held that a party whose motion in limine has been overruled does not waive the alleged error by being the first to broach the subject of the motion during jury voir dire or examination of a witness. *Burnett v. Fowler,* 315 Ark. 646, 650, 869 S.W.2d 694, 696 (1994).

objected that the statement was "hearsay and inadmissible, and it's obviously highly prejudicial." Smith also objected and moved for a mistrial when Jones testified that on the way to the hospital, "He was crying. He was telling the child to wake up and saying he couldn't go back to jail." The State responded to the objection in opening statement, asserting that Smith's declaration went to show a guilty conscience and that it was an excited utterance. The State also argued excited utterance in response to the objection during Jones's testimony. The circuit court overruled the objection both times.

The argument that the declaration by Smith revealed a guilty conscience refers to a statement by a party-opponent. Arkansas Rule of Evidence 801(d)(2)(i) provides in relevant part that a statement is not hearsay if "[t]he statement is offered against a party and is (i) his own statement, in either his individual or a representative capacity." A statement made by a defendant and offered against him or her at trial constitutes an admission of a party opponent. *Ward v. State*, 350 Ark. 69, 73, 84 S.W.3d 863, 865–66 (2002); *see also Webb v. State*, 327 Ark. 51, 62, 938 S.W.2d 806, 813 (1997) (statement of Webb to a nurse taking his blood that he wanted her to give him his lethal injection). Smith's declaration was admissible evidence as a statement by a party opponent. "Where evidence is admissible, a party is entitled to refer to it during opening statement." *Rank v. State*, 318 Ark. 109, 883 S.W.2d 843, 845 (1994). The circuit court correctly overruled the objection, and, thus, we need not reach the question of whether there was a need to grant a mistrial.

### Sexual Assault

Smith moved in limine to exclude evidence of injuries to LB's vagina and surrounding tissues because there was no charge that a sexual assault occurred nor expert testimony that a sexual assault occurred. The State responded by arguing that all injuries sustained at the hands of Smith were relevant and could be shown. The circuit court agreed. Smith was accused of causing many injuries to LB. She suffered multiple bruises and abrasions, and there was evidence that she was struck by a solid object at an accelerated speed, or that her body was thrown at a solid object at an accelerated speed. Dr. Craig could not testify as to what precisely caused the injuries to her vagina and surrounding tissues; however, he did testify that if they were caused by a sexual assault, it was a mild assault. The injuries Smith complains of were suffered contemporaneously with other injuries to her abdomen and torso. They were simply part of the injuries Smith was accused of causing. A decision to admit or exclude evidence is within the sound discretion of the circuit court. *Rounsaville v. State*, 374 Ark. 356, 365, 288 S.W.3d 213, 220 (2008). A circuit court abuses its discretion when, in making a decision, it acts improvidently, thoughtlessly, or without due consideration. *Sauerwin v. State*, 363 Ark. 324, 327, 214 S.W.3d 266, 269 (2005). We cannot say that the circuit court abused its discretion in finding the evidence admissible.

We also note that on appeal Smith alleges that the circuit court erred in failing to exclude comments by the State made in rebuttal during closing argument. The argument is that the State invited the jury to draw inferences of sexual assault that were not supported by the evidence. Smith failed to object to the State's closing argument at trial. An objection to alleged prejudice caused by improper closing argument had to be made at trial. *Cothren v. State*, 344 Ark. 697, 709, 42 S.W.3d 543,

551 (2001). The issue of the propriety of the ⌊13State's closing argument was not preserved for review on appeal.

## Additional Element

 Smith finally alleges that the circuit court erred in allowing the State to reopen the case, put on evidence of his age, and amend the criminal information to correctly assert the elements of the capital-murder charge. The criminal information charged Smith with capital murder and stated "Under circumstances manifesting extreme indifference to the value of human life, he knowingly caused the death of LB, who was fourteen (14) years of age or younger ..." Apparently, whoever prepared the criminal information failed to include the final phrase, "at the time the murder was committed if the defendant was eighteen (18) years of age or older at the time the murder was committed." Thus, Smith was accused of committing capital murder by causing the death of a person under fourteen years of age, but he was not asserted to be eighteen or older. We note that the criminal information cover sheet includes Smith's date of birth as 1988.

The reason for requiring a specific directed-verdict motion such as Smith made in this case, is to pinpoint absent proof, allowing the circuit court the option of either granting the motion, or, if justice requires, allowing the State to reopen its case to supply the missing proof. *Gillard v. State*, 372 Ark. 98, 101, 270 S.W.3d 836, 838–39 (2008). A trial court's decision to reopen a case will not be reversed absent an abuse of that discretion. *Holloway v. State*, 312 Ark. 306, 312, 849 S.W.2d 473, 476 (1993). We find no abuse of discretion. Doubtless, Smith was aware that he was over the age of eighteen. There was no surprise or ⌊14 +prejudice in allowing the State to reopen its case. *See Hill v. State*,

370 Ark. 102, 105, 257 S.W.3d 534, 537 (2007) (The State is entitled to amend an information at any time prior to the case being submitted to the jury so long as the amendment does not change the nature or degree of the offense charged or create unfair surprise.).

## 4–3(i)

Pursuant to Arkansas Supreme Court Rule 4–3(i), this court has reviewed the abstract, addendum, and record for all adverse rulings on objections, motions, and requests made by either party. No reversible error has been found.