2009 Ark. 540

**Ronald J. CAMPBELL, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 07–623.**

Supreme Court of Arkansas.

Nov. 5, 2009.

Rehearing Denied Dec. 10, 2009.

Friday, Eldredge & Clark, LLP, by: James M. Simpson, Martin A. Kasten, and Kimberly Dickerson Young, Little Rock, for appellant.

Dustin McDaniel, Attorney General, by: Eileen W. Harrison, Assistant Attorney General, for appellee.

JIM HANNAH, Chief Justice.

Appellant, Ronald Jay Campbell appeals his jury conviction for engaging in a Continuing Criminal Enterprise ("CCE") and his convictions for additional multiple crimes allegedly committed through the CCE. We hold that the circuit court erred in failing to grant appellant's motion for a directed verdict based on the State's failure to present substantial evidence to prove the CCE. We further hold that the circuit court erred in failing to grant appellant's motion to exclude evidence of Kelly Campbell's sexual conduct. *See* Ark. R. Evid. 404(b). We finally hold that the circuit court erred in failing to grant appellant's motion to suppress evidence seized in the execution of a search warrant. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(6) based on substantial questions of law concerning the validity, construction, or interpretation of an act of the General Assembly. We reverse Campbell's convictions and remand this matter to the circuit court.

Appellant Ronald Jay Campbell, appellant's wife Kelly Harrison Campbell, Larry Gene Norwood, Bobby Junior Cox, Thomas Privett, and Amy Staley were charged in the original information of being members of a Continuing Criminal Enterprise with appellant as manager. Appellant's motion to sever was denied. Privett and Staley were severed before trial, and Norwood was dismissed by the State in the early stages of trial. Cox was later granted a mistrial. When the case was submitted to the jury, appellant and Kelly Harrison Campbell remained as joint defendants.

Appellant became the Chief of Police of the City of Lonoke in October 2002. In August 2006, Lonoke County Prosecutor Lona McCastlain filed a seventy-eight count criminal information naming appellant and five others who were alleged to be members of a CCE managed by appellant. Pursuant to a Bill of Particulars filed by the State on August 22, 2006, appellant was accused of using his authority and power as police chief to create and run a criminal enterprise by managing others to obtain for the enterprise money through theft, controlled substances for personal use by theft and burglary, personal services to clean up private personal and private real property, illicit sexual relations for purposes of gratification, and threat of criminal prosecution as a means to extort information on drug operations, controlled substances, and money from drug dealers. Appellant was more specifically accused of running a ring selling controlled substances, arresting drug dealers and confiscating their controlled substances and money for personal use, acquiring prescription drugs by fraud and burglary, refraining from sending information and evidence on drug dealers to the prosecuting attorney's office in exchange for information on other drug dealers, and facilitating sex between his wife Kelly Campbell and Arkansas Department of Correction inmates housed at Lonoke in the hope the inmates would agree to a "tryst" involving appellant. Other allegations of crimes and wrongdoing were alleged during the course of trial but need not be set out in detail for purpose of this appeal.

*I.   Directed–Verdict Motion*

Appellant asserts that the evidence was insufficient to sustain his convictions on a

number of charges, including the CCE charge. Because we conclude that there was insufficient evidence to sustain the CCE charge, and because we conclude the entire trial was tainted by the evidence admitted on the CCE charge, we reverse on that basis. Therefore, we will not address the sufficiency-of-the-evidence claims on the other charges.

■ Appellant's sufficiency-of-the-evidence argument was not appellant's first point on appeal; however, due to double-jeopardy concerns, we review the issue before reaching other issues on appeal. *Dunn v. State,* 371 Ark. 140, 142, 264 S.W.3d 504, 505 (2007). In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

■ Appellant was convicted of first-degree engaging in a continuing criminal gang, organization, or enterprise. Arkansas Code Annotated § 5–74–104(a) (Repl.2005) sets out the crime of engaging in a continuing criminal enterprise as follows:

(a)(1) A person commits the offense of engaging in a continuing criminal gang, organization, or enterprise in the first degree if he or she:

(A) Commits or attempts to commit or solicits to commit a felony predicate criminal offense; and

(B) That offense is part of a continuing series of two (2) or more predicate criminal offenses that are undertaken by that person in concert with two (2) or more other persons with respect to whom that person occupies a position of organizer, a supervisory position, or any other position of management.

A predicate criminal offense is any violation of Arkansas law that is a crime of violence or a crime of pecuniary gain. Ark.Code Ann. § 5–74–103(4) (Repl.2005).

■ Engaging in a continuing criminal enterprise involves the creation of an organization that undertakes criminal acts in concert with other persons. *See Hughey v. State,* 310 Ark. 721, 723, 840 S.W.2d 183, 184 (1992).[1] This means that the State must prove that the defendant furthered a continuing criminal enterprise by working to promote the interests of the enterprise. *United States v. Cooper,* 19 F.3d 1154, 1165 (7th Cir.1994).[2] More specifically, the State had to prove that appellant exercised influence over the CCE members as exemplified by the members' compliance with appellant's instructions or commands with respect to the CCE. *Hughey,* 310 Ark. at 724, 840 S.W.2d at 184–

---

1. *Hughey v. State,* 310 Ark. 721, 840 S.W.2d 183 (1992) was decided under the former continuing criminal-enterprise statute. *See* Ark.Code Ann. § 5–64–414 (Supp.1991). Pursuant to Arkansas Code Annotated section 5–74–104(a)(1)(B) (Repl.2005), the defendant must be an organizer, a supervisor, or in a position of management. In discussing similar language in the former statute, we quoted *United States v. Moya–Gomez,* 860 F.2d 706, 746 (7th Cir.1988) (quoting *United States v. Possick,* 849 F.2d 332, 335 (8th Cir.1988)), including the statement that the government need only prove that the defendant was an organizer, a supervisor, or a manager, not all three.

2. The court in *United States v. Cooper,* 19 F.3d 1154 (7th Cir.1994) discussed 21 U.S.C. § 848 (2002). As with the former Arkansas statute, there are similarities between the current Arkansas statute and the federal statute, and reference to cases decided under the federal statutes offers helpful guidance. *See Hughey v. State,* 310 Ark. 721, 723, 840 S.W.2d 183, 184 (1992).

85 (quoting *United States v. Moya–Gomez*, 860 F.2d 706, 746 (7th Cir.1988)).

Appellant was accused of running a criminal enterprise that was in the business of, among other things, extorting money, acquiring drugs, and acquiring an opportunity for appellant to have sex. During opening statement, the State told the jury that appellant was the "organizer" of a CCE and that would be proven by witnesses that "are important to show the operation and this enterprise and these crimes we've alleged." During the trial, the State provided no direct evidence of the alleged CCE or that appellant was directing a criminal enterprise.[3] In other words, no witness testified that there was an agreement creating a criminal organization with appellant as manager. Rather, the jury was left to infer from the nature of the alleged offenses that they were committed in concert pursuant to a CCE managed by appellant. Thus, the State relied on circumstantial evidence.

Circumstantial evidence is evidence of circumstances from which a fact may be inferred. *Jackson v. State*, 363 Ark. 311, 316, 214 S.W.3d 232, 235 (2005). Circumstantial evidence may constitute substantial evidence to support a conviction. *Dunn*, 371 Ark. at 143, 264 S.W.3d at 505. Guilt can be established without direct evidence, and evidence of guilt is not less because it is circumstantial. *Id.*, 264 S.W.3d at 505. The rule in the use of circumstantial evidence is that, to be sub-

stantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is typically a question for the jury to decide. *Id.*, 264 S.W.3d at 506. However, we will overturn the jury's determination where the evidence fails to meet the standard of substantial evidence and thus leaves the jury to speculation and conjecture in reaching its verdict. *Id.*

To be a CCE, the course of illicit conduct must involve a series of related crimes that span a definite period of time. *Hughey*, 310 Ark. at 723, 840 S.W.2d at 185. Further, the predicate offenses must be related to each other. *United States v. Edmonds*, 80 F.3d 810, 814 (3d Cir.1996). A series of violations is established by multiple related violations. *See United States v. Jones*, 801 F.2d 304, 307 (8th Cir.1986). Consequently, separate unrelated violations do not constitute crimes under a CCE.

In the case before us, among other things, the appellant was alleged to have been in the business of selling controlled substances. Dexter Washington, previously convicted of possession of a controlled substance with intent to deliver, testified that appellant threatened to disrupt his probation if he did not sell crack cocaine for appellant.[4] The State offered no evidence to show that this alleged crime

---

**3.** Direct evidence is evidence that proves a fact without resort to inference, when for example, it is proved by witnesses who testify to what they saw, heard, or experienced. *Jackson v. State*, 363 Ark. 311, 316, 214 S.W.3d 232, 236 (2005).

**4.** We note that the testimony of Dexter Washington discussed above was elicited on direct examination. On cross-examination, Washington refused to testify based on his right

against self-incrimination. Appellant objected, arguing he was being denied his right of confrontation, and he raises that issue on appeal. Because this case is being reversed and remanded, we need not address the issue of the right of confrontation because Washington may or may not testify at any retrial, and if he does, and if he asserts his right against self-incrimination, the issue will have to be ruled on at that time.

was related to any other crime allegedly carried out pursuant to the CCE.

Ron Adams testified that he cooked methamphetamine and sold the drug to Roger Light at the request of bondsmen Bobby Cox and Larry Norwood. Cox and Norwood hoped to entrap Light by threatening to turn him in on possession of the methamphetamine in order to compel Light to reveal the whereabouts of bond jumper Gene Beasley. Adams further testified that after he cooked and provided the methamphetamine to Light, he called Cox, and that later appellant came to his house and retrieved the methamphetamine lab. Appellant turned the methamphetamine lab in to the Lonoke Sheriff's Department, which later identified Adams from fingerprints found on the lab items. The State offered no evidence showing that this crime was related to the crime asserted by Washington, or in other words, that these crimes were part of a CCE. Rather, the evidence alleged two unrelated crimes.

Evidence of Kelly's alleged sexual conduct with Arkansas Department of Corrections prisoners housed in Lonoke (309 inmates) consumed a significant portion of this lengthy trial. The State argues on appeal that the "evidence of Kelly's inappropriate relationship with 309 inmates was relevant to demonstrate the degree to which he controlled and manipulated his wife." How this was alleged to relate to a CCE was not revealed to the jury by the State. The State offered nothing to show that this highly prejudicial evidence was anything other than evidence of Kelly's personal conduct engaged in for her own gratification. The State argued at trial that appellant facilitated Kelly's sexual conduct with the inmates because he wanted to engage in a "tryst" with the inmates. No evidence supporting this argument as it related to a CCE was offered.

It was also alleged that the CCE was in the business of burglary and theft of prescription medications from private homes. The State alleged that on some occasions, Kelly acted alone, and on other occasions, appellant was present and acted to distract homeowners so that Kelly could look for prescription medications. As with the other allegations, the State offered no evidence to show that these alleged crimes were part of a CCE. This issue was summed up by the State in closing argument: "Any place there may be drugs, Kelly Campbell is going to show up." Thus, the State again alleged unrelated crimes to prove the CCE managed by appellant.

There were a number of other allegations of criminal conduct that the State asserted were part of a CCE under appellant's management. However, as with the alleged crimes noted above, they are all allegations of unrelated crimes. Evidence of unrelated criminal offenses does not support a CCE merely on the ground that the offenses were committed close in time or even that they were committed by the same individuals. *Hughey,* 310 Ark. at 723, 840 S.W.2d at 184. There must be evidence that there was a CCE and that the members of the CCE were acting under the management of the defendant as exemplified by their acting at his direction in furthering the purposes of the CCE. *Hughey,* 310 Ark. at 724, 840 S.W.2d at 184–85. Here, the State failed to offer substantial evidence that appellant was the manager of a CCE.

The failure to present substantial evidence of the CCE prejudiced appellant and deprived him of a fair trial. In a CCE, as with severance, where crimes charged are not part of a single scheme or plan, joinder of those charges in a single trial raises "a grave risk of prejudice." *Clay v. State,* 318 Ark. 550, 553, 886

S.W.2d 608, 610 (1994). Under Arkansas Rule of Criminal Procedure 22.2, a defendant has an absolute right to "severance of offenses joined solely on the ground that they are of the same or similar character." *Clay,* 318 Ark. at 553, 886 S.W.2d at 610. Not only are the alleged crimes in the present case unrelated, they were also largely dissimilar. Our concern is that if the State is allowed to stack charges and try a defendant on a number of unrelated charges, together with other defendants in one trial, "the jury will convict, where, if they were listening to the evidence on one charge only, they would find it wholly insufficient as to the degree of proof required." *Clay,* 318 Ark. at 555–56, 886 S.W.2d at 611 (quoting ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Joinder and Severance,* § 2.2(a) cmt. (Tentative Draft 1967)). Because there was a lack of substantial evidence offered in support of the CCE, the jury was left to speculation and conjecture. When a verdict is based solely upon speculation or conjecture, we reverse. *Pridgett v. State,* 276 Ark. 52, 54, 631 S.W.2d 833, 834 (1982). The circuit court erred in failing to grant Campbell's motion for directed verdict based on the State's failure to present substantial evidence to prove the CCE.

## II. *Rule 404(b)*

▉▉▉ Appellant moved in limine to exclude letters, telephone transcriptions, and other evidence and testimony concerning Kelly Campbell's alleged sexual conduct. That motion was denied and significant portions of the trial concerned the alleged sexual conduct, including the State's reading letters to the jury that contained explicit descriptions of sexual encounters.

In alleging the CCE, the State argued that appellant facilitated the sexual conduct between Kelly Campbell and the 309 inmates in furtherance of the CCE, making her conduct evidence of other crimes, wrongs, or acts of appellant relevant under Arkansas Rule of Evidence 404(b). However, the State offered no evidence to show that Kelly Campbell's alleged sexual conduct was in any way related to conduct alleged against appellant. The evidence the State offered made it clear that Kelly Campbell was seeking her own gratification.

Rule 404(b) declares evidence relevant when, although it constitutes evidence of other crimes, wrongs, or acts, it also constitutes relevant evidence proving the charged crime. *See* Ark. R. Evid. 404(b). In other words, evidence is not excluded merely because aside from proving the charged crime it also reveals the commission of another crime, wrong, or act. "[T]he fact that evidence shows that the defendant was guilty of another crime does not prevent it being admissible when otherwise it would be competent on the issue under trial." *Umbaugh v. State,* 250 Ark. 50, 55, 463 S.W.2d 634, 636 (1971) (quoting *State v. DuLaney,* 87 Ark. 17, 23, 112 S.W. 158, 160 (1908)). Such evidence is declared to be independently relevant because it proves a material point in the charged crime rather than merely showing that the defendant has committed other criminal or bad acts. *See Henderson v. State,* 360 Ark. 356, 361, 201 S.W.3d 401, 406 (2005). However, evidence of prior crimes, wrongs, or acts, even if relevant under Rule 404(b), is not admissible unless the probative value of the evidence substantially outweighs the prejudicial harm pursuant to Arkansas Rule of Evidence 403. *Osburn v. State,* 2009 Ark. 390, at 41–42, 326 S.W.3d 771, 795. The evidence of Kelly Campbell's alleged sexual conduct did not make the existence of any fact of consequence to the trial of appellant more or less probable. It was irrelevant, and its

admission prejudiced appellant and deprived him of a fair trial.

### III. *Search Warrant*

■ Appellant raises a number of issues about admission of evidence. Because we are reversing this case and remanding it for a new trial, we need not address all those issues, as they will be decided anew in any retrial. However, appellant asserts that the search warrant was defective and the evidence should have been suppressed. Because we agree that the motion to suppress evidence should have been granted and to avoid repetition of this error on any retrial, we decide this issue now.

The Affidavit For Search and Seizure Warrant provided in relevant part that appellant and his wife Kelly Campbell were arrested on various charges including theft, criminal conspiracy, burglary, conspiracy to manufacture methamphetamine, and obtaining a controlled substance by fraud. It further stated that Kelly Campbell was in possession of drug paraphernalia in the form of two "snorting devices" at the time of her arrest outside her residence. The affidavit also provided that "prescription medicine bottles, an older model 39 revolver, various jewelry items and South African coins ... have not been recovered" and, on that basis, the State sought a warrant to search the residence, curtilage, outbuildings, vehicles, and person of Ronald Jay Campbell without indicating why those places and person were to be searched. Before a search warrant may issue, an affidavit or recorded testimony is required "particularly setting forth the facts and circumstances tending to show that ... things are in the places ... to be searched." Ark. R.Crim. P. 13.1(b). There must be "probable cause to believe that the place to be searched contains evidence of the crime." *Yancey v. State,* 345 Ark. 103, 117, 44 S.W.3d 315, 324 (2001); *Nance v. State,* 323 Ark. 583, 596, 918 S.W.2d 114, 120 (1996) (citing *Johnson v. State,* 270 Ark. 247, 604 S.W.2d 927 (1980)).

The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that specific things to be searched for and seized are located on the property to which entry is sought. *Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970 [56 L.Ed.2d 525] (1978). *Accord Gates [Illinois] v. Illinois [Gates],* 462 U.S. at 238 [103 S.Ct. 2317], (a fair probability that contraband or evidence of a crime will be found in a particular place). *See also United States v. Malin,* 908 F.2d 163 (7th Cir.1990). The affidavit must provide facts by direct or circumstantial evidence that there is reasonable cause to believe the specific things sought are located on the property to which entry is sought.

*Yancey,* 345 Ark. at 116, 44 S.W.3d at 323. The Affidavit in the present case does not even assert that the items to be seized would be in the home, the vehicles, or on appellant's person. It is clear from the Affidavit For Search and Seizure Warrant that the law enforcement affiant is asserting that when a person is arrested, his or her home, vehicles, and person may be searched as a matter of course. This is directly contrary to law. *See* Ark. R.Crim. P. 13.1(b).

■ The State asserts that even if there was a problem with the Affidavit, the good-faith exception saves the warrant. However, "[w]here the officers' affidavit is so lacking in indicia of probable cause as to render official belief as to its existence unreasonable," the good-faith exception does not apply. *Kelley v. State,* 371 Ark. 599, 606, 269 S.W.3d 326, 331 (2007) (quot-

ing *United States v. Leon,* 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). The affidavit fails to assert that there is probable cause, let alone set out particular facts tending to show that the items to be seized are in the places to be searched. Instead, the affidavit errantly relies on the arrest for crimes as the basis to search the home, the vehicles, and the person. The circuit court erred in failing to grant Campbell's motion to suppress evidence seized in the execution of the search warrant.

Reversed and remanded.