James FLOWERS *v.* STATE of Arkansas

CR 07-851

282 S.W.3d 790

Supreme Court of Arkansas
Opinion delivered April 10, 2008

*Ronald L. Davis, Jr. Law Firm,* by: *Ronald L. Davis, Jr.,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

J IM HANNAH, Chief Justice. James Flowers appeals his conviction for capital murder, his conviction for aggravated robbery, and his sentences of life without parole and four-hundred-eighty months.[1] On appeal, Flowers alleges that the circuit court erred in denying his directed-verdict motion, in denying his objection to the State's representation of a jury instruction, in failing to grant his motion to suppress a photo spread, in admitting inconsistent identifications at trial, and in overruling his objection to a change of identification at trial. The circuit court did not err; therefore, its judgment is affirmed. Because Flowers was sentenced to life imprisonment on the capital murder conviction, jurisdiction to hear his appeal lies in this court. *See* Ark. Sup. Ct. R. 1-2(a)(2).

---

[1] Flowers was convicted of four counts of aggravated robbery and sentenced to four-hundred-eighty months on each conviction; however, the sentences were ordered to run concurrently.

*Directed-Verdict Motion*

Flowers first alleges that the circuit court erred in denying his motion for a directed verdict. A directed-verdict motion is a challenge to the sufficiency of the evidence. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). A challenge to the sufficiency of the evidence asserts that the verdict was not supported by substantial evidence. *See Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). Substantial evidence is evidence of sufficient force and character that without resorting to speculation and conjecture compels with reasonable certainty a conclusion one way or the other. *Id.* We review the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm where the record reveals that substantial evidence sustains the verdict. *See id.*

The following facts were submitted to the jury. At dusk on the evening of July 29, 2005, two men walked up the street to the homes of Kenneth and Elnora Parks and Beverly Murdock. The Parks and Murdock homes stand side by side. At this time, Kenneth and Elnora Parks were inside their home. Beverly Murdock was not at home. Seven children ranging in ages from ten to fourteen years old were playing together in the yards of these two homes.

The two men approached the children and asked one if his father was home. The street lights were on and several of the children could see the two men clearly. Elnora came out to see what the men wanted. She too was able to see the two men clearly. After talking briefly to Elnora, the two men walked off down the street.

The children went into the Murdock home. At this time, Murdock still was not home. One of the children, Cierra Jarrett, went into her bedroom. The other six children remained in the front room playing video games and pool. They heard a noise at the carport door. Someone was breaking into the home. The two men the children had seen on the street entered the home and came into the front room. One man was larger than the other and both held pistols in their hands. Each man waved his pistol at the children.

The men stated that they wanted "the money and the weed." They compelled the children to turn over chair cushions and help them search the house. The children were finally forced into the master bedroom where the men broke into a closet and

removed something. One of the children stated that the men found money and drugs in the closet.

At about the time the men and the children went into the master bedroom, Cierra called Elnora on a cellular phone and told her that someone had broken into the house. Elnora awakened her husband and called 911. Elnora and Kenneth ran over to the Murdock home. Elnora was screaming, and as they reached the front door to the Murdock home, the front door opened. The larger of the two men came out. Kenneth stated that he was unarmed and only wanted his children. The man stated "Eff you, you motherfucker," and fired one cartridge. The bullet from that cartridge struck Kenneth in the head, and he fell to the ground where he soon died. In an attempt to draw the man away from the children, Elnora turned and ran while yelling for the man to come after her.

Neither Elnora nor the children knew who the larger of the two men was, and they only learned of his name in the course of the criminal prosecution. At the time of the murder and robbery, none of the witnesses were able to give law enforcement more than a description of the two men. Law enforcement lifted fingerprints from the scene, but no useable prints of the robbers were obtained. A 9mm cartridge casing was retrieved from the scene, but that also provided no help in identifying the assailants. No other helpful physical evidence was found.

Several weeks after the incident, Brian Anderson and Deric Parks, two of the children present in the home at the time of the robbery, were walking a dog in the neighborhood. Brian saw a man on a porch who was staring at him, and Brian thought the man looked like one of the men who broke into the Murdock home. Law enforcement identified the man and set up a photo spread that included the man's photograph. This photo spread was shown to Elnora and the children. The children could not identify any of the men in the spread as either of the two men who broke into the Murdock home. Elnora was not able to identify any of the men in the spread as the man who shot Kenneth. Additional photo spreads were created and shown to Elnora and the children in the weeks and months after the robbery and murder, and again, no suspect was recognized by the witnesses.

Law enforcement was able to make little progress in the case until November 2005 when Brian Anderson was riding home on the school bus and recognized a man in a nearby car. He thought

the man was one of the perpetrators. He wrote down the license plate number of the car, and that number led police to James Flowers. Law enforcement set up a new photo spread that included Flowers.

The spread was composed of head-shot photographs of six men. Each man was black, each had a similar expression on his face, each was of about the same build and physical characteristics, and the background behind each man was a similar off-white featureless setting. The men differed in that they were not all wearing a similar shirt; however, little of the shirt was visible given these were head-shot photographs. One man was wearing what appeared to be a collarless orange county jail jumpsuit. Each man's hair was slightly different. One was bald, one had somewhat longer but still relatively short hair, and two, including Flowers, had short hair but a markedly receding hair line.

Detective Steve Moore created the photo spread and showed it first to Brian. He picked out Flowers in a matter of seconds and gave a positive identification of Flowers. After showing the photo spread to Brian, Moore instructed Brian not to have any contact with any of the other witnesses to the robbery and murder. At trial, Brian testified that he had no contact with any of the other witnesses that day.

Moore determined that he could not contact Elnora and her children Eric and Deric until the boys got out of school that day. In the meantime, Moore rearranged the photo spread so that the photograph of Flowers appeared in a different position than it did when the spread was shown to Brian. That afternoon, Elnora brought Eric and Deric to the police station. They were unaware of the reason for their visit. Deric was first taken into a room by Moore. Another detective was present. Deric was shown the rearranged photo spread and provided a positive identification of Flowers in about one minute. Eric provided a look-alike identification. Elnora went right to the photograph of Flowers and gave a positive identification.

After meeting with Elnora and her children, Moore rearranged the photo spread back as it had been when shown to Brian. A few days later, Moore showed the spread to Dezmund Herrin, one of the other children present at the robbery. Dezmund went immediately to the photo of Flowers and gave a positive identification. The remaining children that viewed the photo spread did not identify Flowers.

At trial, Brian, Dezmund, Deric, and Eric positively identified Flowers as the larger of the two men who robbed them. Elnora positively identified Flowers as the man who shot Kenneth.

A directed-verdict motion alleges that the case may not be submitted to the jury because the State has failed to submit substantial evidence that, short of speculation and conjecture, would support a verdict against the criminal defendant. *See Strong*, supra. The verdict reached was that Flowers committed capital felony murder and aggravated robbery.

■ Robbery is a misdemeanor or felony theft committed by the use of force or the threat of force. *See* Ark. Code Ann. § 5-12-102(a) (Repl. 2006). Aggravated robbery may be committed by robbery[2] while armed with a deadly weapon. *See* Ark. Code Ann. § 5-12-103 (Repl. 2006). Flowers held a pistol. A firearm is a deadly weapon. *Mitchell v. State*, 290 Ark. 87, 717 S.W.2d 195 (1986). Flowers committed theft while armed with a deadly weapon, and this is sufficient evidence to support a verdict of aggravated robbery. *See Robinson v. State*, 317 Ark. 17, 875 S.W.2d 837 (1994). The circuit court did not err in denying the motion for directed verdict on aggravated robbery.

■ Aggravated robbery was the felony underlying the capital murder charge. Capital murder may be committed when a person in immediate flight from the aggravated robbery causes the death of another person under circumstances manifesting extreme indifference to the value of human life. *See Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214 (2008); *see also* Ark. Code Ann. § 5-10-101(a)(1)(B) (Repl. 2006). Extreme indifference to the value of human life means deliberate conduct that causes the death of another person. *Jefferson, supra*. Pointing and firing a firearm at an unarmed victim constitutes extreme indifference to the value of human life. *See Porter v. State*, 358 Ark. 403, 191 S.W.3d 531 (2004).

---

[2] To commit aggravated robbery, a person must commit robbery as defined in Ark. Code Ann. § 5-12-102 (Repl. 2006). *See* Ark. Code Ann. § 5-12-103(a) (Repl. 2006). Relevant to this case, robbery is committed under section 5-12-102 when a person uses force or the threat of force in the course of a misdemeanor or felony theft. *See* Ark. Code Ann. § 5-12-102(a) (Repl. 2006).

■ The State also showed the element of immediate flight. As Flowers obtained the goods in the closet, Elnora was heard screaming, and Flowers left by the front door where he immediately met Elnora and Kenneth. The shot that killed Kenneth was fired in that moment of flight. The evidence offered constituted substantial evidence from which the jury could conclude that Flowers caused the death of Kenneth Parks in immediate flight from the felony of aggravated robbery under circumstances manifesting extreme indifference to the value of human life. The circuit court did not err in denying the motion for a directed verdict on capital murder.

*Failure to Proffer a Jury Instruction/Misleading Argument on a Jury Instruction*

Flowers next asserts that he was deprived of a fair trial when the state in closing argument asserted, "Only if all 12 of you have reasonable doubt as to the guilt of this defendant on aggravated robbery. . . ." Flowers's counsel interrupted the State and asserted "that's not what the jury instruction says." Jury instruction number twenty-one provided: "If you have reasonable doubt of the defendant's guilt on the charge of Aggravated Robbery, you will then consider the charge of robbery." This language is taken directly from AMI Criminal 2d 302.

■ Flowers argues that the State's representation of AMI 302 misled the jury into believing that before it could consider the lesser-included offense of robbery, all jurors had to have reasonable doubt on aggravated robbery. This same alleged error and argument is discussed in *Boyd v. State*, 369 Ark. 259, 253 S.W.3d 456 (2007), where the prosecutor argued at trial that the only way the jury could consider the lesser-included offense of first-degree murder was "if all twelve of you decide that he is not guilty of capital murder." *Boyd*, 369 Ark. at 264, 253 S.W.3d at 460. The court concluded that this was "in essence" an argument that the word "you" in AMI 302 was ambiguous. *Id.* The court in *Boyd* further held that Boyd failed to preserve the issue for appeal because he did not proffer a jury instruction that he believed correctly stated the law. Likewise, in this case, because Flowers failed to proffer an instruction that corrected the alleged ambiguity, the issue will not be considered on appeal. *See Boyd, supra.*

### Inherently Suggestive Photo Spreads

Flowers asserts that the photo spreads were inherently suggestive. However, Flowers does not develop an argument on this issue. This precludes review on appeal. *See Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2003).

### Identification at Trial

Flowers finally asserts that the circuit court erred in admitting Eric Parks's in-court positive identification because Eric was only able to provide a look-alike identification from the photo spread. He also asserts that it was error to admit Deric Parks's testimony because he was unable to recall various details about the robber's face and clothing. However, Flowers did not object to Eric's and Deric's in-court identifications. This precludes appellate review of this issue. *See Harris v. State*, 366 Ark. 190, 234 S.W.3d 273 (2006).

### Ark. Sup. Ct. R. 4-3(h)

Pursuant to Rule 4-3(h) of the Arkansas Supreme Court Rules, the record has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Flowers, and no prejudicial error has been found.

Affirmed.