Wilson Antonio PRICE  *v.*  STATE of Arkansas

CR 07-1195                                                284 S.W.3d 462

Supreme Court of Arkansas
Opinion delivered May 15, 2008

*William R. Simpson, Jr.,* Public Defender, and *Sharon Kiel,* Deputy Public Defender, by: *Clint Miller,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Valerie Glover Fortner,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Wilson Antonio Price was convicted by a Pulaski County jury of the capital murder of Keith Harris and sentenced to life imprisonment without the possibility of parole. He now appeals, alleging one point of error: that the circuit court erred in denying his motion for directed verdict, because the State failed to introduce substantial evidence that he caused the death of the victim under circumstances manifesting extreme indifference to the value of human life. Because Price was sentenced to life imprisonment, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2007). We find no error and affirm.

On the night of March 3, 2006, brothers Mark and Terry Harris were driving in North Little Rock with their cousin, Keith. Mark drove his uncle's blue Dodge Stealth, while Terry sat in the front passenger's seat and Keith sat in the back. At one point, Mark saw an orange Pontiac Grand Am that he believed was being driven by a friend. He followed the car and motioned for it to stop. The Grand Am eventually pulled up to the keypad at the entrance gate of Shorter College Gardens Apartments. At that point, Mark had stopped at a nearby stop sign. Upon realizing that the car did not belong to his friend, he started to pull away. He then saw a person lean out of the driver's side window of the Grand Am and fire a gun. Both Mark and Terry recognized the shooter as Price, with whom they were acquainted. Mark yelled out the window, identifying himself to Price. Terry then informed Mark that Keith had been shot. Mark testified that when he yelled at Price, telling him that he had hit Keith, Price looked surprised. Mark then drove to Baptist Memorial Medical Center in North Little Rock. Keith died shortly thereafter, with the cause of death being identified as a gunshot wound to the head. Dr. Charles Kokes, the chief medical examiner at the Arkansas State Crime Laboratory, testified that Keith's atypical gunshot wound was consistent with the bullet hitting the outside of the car before it entered into his body.

Detective Mike Cook of the North Little Rock Police Department conducted a search of the crime scene and found a shell casing from a forty-five caliber handgun. He estimated that the shell casing was discovered approximately five feet from the keypad at the Shorter Gardens gate. Officer Daniel Haley, also of the North Little Rock Police Department, arrested Price on April 7, 2006, pursuant to a warrant. He testified that, after he pulled Price's vehicle over and before Price exited the vehicle, he observed Price lean over into the passenger's side floorboard. When Price's vehicle was inventoried later, a loaded forty-five caliber handgun was located in the passenger's side floorboard. According to the testimony of James Looney, a firearm and tool mark examiner at the Arkansas State Crime Laboratory, both the bullet recovered from Keith Harris's head and the shell casing found at the crime scene originated from the gun that was found in Price's vehicle.

Price's only defense at trial was self-defense. He alleged that he was being chased and that the occupants of the Dodge Stealth fired approximately four shots at him. He further contended that, when he reached Shorter Gardens, he was not able to open the gate

before the Dodge Stealth pulled up behind him. He then fired a shot, hoping to scare the shooters away. Both Mark and Terry Harris disputed Price's narrative, testifying instead that no one in their car carried a gun and that no shots were fired from their car. Investigator John Desitzlets of the North Little Rock Police Department, who searched and photographed the Grand Am, confirmed that there were no bullet holes in the car. He also testified that his search of the Dodge Stealth revealed no weapons or reasons to believe a gun had been fired from that car. Katrina Green, the owner of the Grand Am who had loaned the car to Price, verified that she found no bullet holes or other evidence to cause her to believe that her car had been fired upon. Detective Cook's search of the crime scene revealed no other shell casings or bullet holes. Finally, Tavio Garrison, who was in the Grand Am with Price at the time of the shooting, testified that no shots were fired from the Dodge Stealth and that neither he nor Price was worried about the car following them. He also stated that, although he initially told Price's attorney that shots were fired from the Dodge Stealth, he had made those statements only because he had received telephone calls from Price and others pressuring him to corroborate Price's story. Garrison testified that Price had used PCP on the night of the shooting, and a photograph of a bottle of brandy found in the car was introduced.

Price introduced a tape of a 911 call, intended to show that he called for help when he was being fired upon by the occupants of the Dodge Stealth. However, the 911 operator testified that nothing during the call indicated it was made during a car chase, and that there were no audible gunshots on the tape. Tavio Garrison testified that he never heard Price call 911. He also denied hearing his voice in the background on the tape. The State suggested that Price placed the call after the shooting and after he and Garrison left the Grand Am.

Price was charged by felony information with purposely discharging a firearm from a vehicle at a person or vehicle he knew or had good reason to believe to be occupied by a person and thereby causing the death of Keith Harris under circumstances manifesting extreme indifference to the value of human life, a charge constituting capital murder under Ark. Code Ann. § 5-10-101(a)(10) (Repl. 2006). The information also included a felon-in-possession charge, which was later severed. From the capital-murder conviction, Price filed a timely notice of appeal.

On appeal, Price argues that the State failed to prove that he caused Keith Harris's death under circumstances manifesting extreme indifference to the value of human life. Specifically, he contends the evidence did not show that he intended to kill Keith Harris. According to Price, when the facts in other cases have been such that the jury could have inferred an actual intent to kill, this court has found substantial evidence supporting the conclusion that the death was caused under circumstances manifesting extreme indifference to the value of human life. Here, he argues, the jury could not have inferred that he intended to kill Keith Harris, as he did not shoot at close range, did not fire multiple shots, and could not have known that a person was in the backseat of the Dodge Stealth because it was dark outside and the windows of both cars were tinted. In response, the State argues that specific intent is not required to prove circumstances manifesting extreme indifference to the value of human life under the unlawful-discharge portion of the capital-murder statute. Rather, the statute and case law require only deliberate conduct that results in the death of a person.

An appeal from a denial of a motion for directed verdict is a challenge to the sufficiency of the evidence. *Flowers v. State*, 373 Ark. 119, 282 S.W.3d 790 (2008). When reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict was supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond speculation or conjecture. *Id.* The reviewing court views the evidence in the light most favorable to the verdict, and considers only evidence that supports the verdict. *Id.*

Circumstantial evidence may constitute substantial evidence to support a conviction. *Id.* The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

The credibility of witnesses is an issue for the jury and not the court. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). The trier of fact is free to believe all or part of any witness's

testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

In accordance with Ark. Code Ann. § 5-10-101(a)(10), a person commits capital murder if the person purposely discharges a firearm from a vehicle at a person or at a vehicle, conveyance, or residential or commercial occupiable structure that he or she knows or has good reason to believe to be occupied by a person, and thereby causes the death of another person under circumstances manifesting extreme indifference to the value of human life. We first note Price's suggestion that he could not have manifested such indifference because he was not aware that there was a backseat passenger in the Dodge Stealth. The statute clearly requires only that the person know or have good reason to believe that the vehicle is occupied by *a person.* Ark. Code Ann. § 5-10-101(a)(10). Thus, it is not a requirement that a person shooting in the direction of a vehicle know where the ultimate victim is actually located inside the vehicle.

This court has consistently defined circumstances manifesting extreme indifference to the value of human life as deliberate conduct that culminates in the death of another person. *Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214 (2008); *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007); *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001); *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000); *Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996). We have also stated that extreme indifference requires actions that evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim. *Perry v. State*, 371 Ark. 170, 264 S.W.3d 498 (2007). We noted in *Perry* that "the victim" refers to the person killed, rather than some "specific victim" deliberately or purposefully killed. *Id.*

In the only case previously before this court involving the unlawful-discharge portion of the capital-murder statute, Ark. Code Ann. § 5-10-101(a)(10), we made clear that the act requiring the purposeful mental state is the act of discharging a firearm from a vehicle. *Hardman v. State*, 356 Ark. 7, 144 S.W.3d 744 (2004). The end result of that purposeful act is the causing of a death under circumstances manifesting extreme indifference to the value of human life, which means that the defendant acts with deliberate conduct that culminates in the death of a person. *Id.* (citing *McCoy v. State*, 347 Ark. 913, 69 S.W.3d 430 (2002)). We held in *Hardman* that, because the appellant requested a jury instruction on the lesser-included offense of first-degree murder that required the

purposeful intent to be directed at the act of causing the death, rather than the act of discharging a firearm from a vehicle, the circuit court did not err in declining to give the proffered instruction. *Id.* In so holding, we noted that the extreme-indifference requirement of Ark. Code Ann. § 5-10-101(a)(10) has never been held to encompass a purposeful mental state. *Id.*

Under this case law, Price is incorrect in his assertion that the State was required to prove that he intended to kill Keith Harris in order to demonstrate that he manifested extreme indifference to the value of human life. Price's conduct in firing the gun in the direction of the Harris vehicle was clearly deliberate, and it culminated in the death of Keith Harris. *See Jefferson v. State, supra.* Moreover, Price's actions indicated an intent to engage in life-threatening activity against Keith Harris. *See Perry v. State, supra.* He makes no argument, and certainly would not be able to establish, that he did not consider the shooting to be life-threatening, even if it were only intended as a "warning shot." Additionally, under *Perry v. State, supra*, Price need not have intended to engage in life-threatening activity against Keith Harris specifically; it is sufficient that he shot in the direction of a car he knew to be occupied.

In accordance with *Hardman v. State, supra*, Price's conduct evidencing a purposeful mental state was his firing of the gun from his vehicle toward the Harris vehicle, with the knowledge that the Harris vehicle was occupied. He need not have acted purposely with regard to the killing of Keith Harris; rather, he need only have acted purposely with regard to shooting the firearm at a car he knew or had good reason to believe was occupied. Because his actions were deliberate and culminated in the death of another person, Price manifested extreme indifference to the value of human life. The fact that he fired only one shot or that he did not fire at close range would not be relevant under the controlling precedent.

This court has held that extreme indifference is "akin to" intent. *McCoy v. State, supra* (quoting *Vowell v. State*, 276 Ark. 258, 634 S.W.2d 118 (1982)). In other words, "the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused." *Martin v. State*, 261 Ark. 80, 547 S.W.2d 81 (1977). Thus, the circumstances manifesting extreme indifference to the value of human life are "part of the proof of the actor's mental state." *McCoy*, 347 Ark. at 922, 69 S.W.3d at 435. Such language would appear to lend support to Price's contention

that, in order to demonstrate circumstances manifesting extreme indifference to the value of human life, the State must prove intent on his part to cause the death of Keith Harris. However, we also stated the following in *McCoy*:

> In the case of capital murder under Ark. Code Ann. § 5-10-101(a)(9) (Repl. 1997), which requires proof that the defendant knowingly caused the death of a person fourteen years old or younger under circumstances manifesting extreme indifference, this court has held that the requirement of extreme indifference goes to the perpetrator's intent, such that he must act with deliberate conduct that culminates in the death of a person.

*Id.* at 922-23, 69 S.W.3d at 436 (citing *Branstetter v. State, supra*). In other words, the intent required is the intent to engage in the conduct that ultimately culminates in the death of a person, and not the intent to cause the death of a person. As we stated in *Hardman v. State, supra*, wherein we applied the same definition of extreme-indifference to the unlawful-discharge portion of the statute at issue here, the act requiring the purposeful mental state under Ark. Code Ann. § 5-10-101(a)(10) is the act of discharging a firearm from a vehicle, and not the act of causing a death. Thus, this court's holdings in *Hardman* and *McCoy* are in fact harmonious. Here, the attendant circumstances demonstrate Price's culpable mental state, as he knew before he fired a shot at the other vehicle that it was occupied by a person.

Although our case law does not explicitly require intent to cause death in order to establish circumstances manifesting extreme indifference to the value of human life, Price nonetheless cites several cases as examples meant to support the notion that, in our cases finding extreme indifference, the jury is always able to infer an intent to kill from the facts. For example, in *Porter v. State*, 358 Ark. 403, 191 S.W.3d 531 (2004), a felony-murder case, the appellant admitted pointing a loaded gun at the victim during a robbery and had fired the gun at the unarmed victim from fewer than three feet away. In *Williams v. State*, 351 Ark. 215, 91 S.W.3d 54 (2002), also a felony-murder case, all witnesses who testified agreed that the victim was unarmed. Moreover, one witness testified that she observed the appellant stand over the victim's fallen body and continue to shoot, while another testified that he saw the appellant hold the victim in a headlock and shoot him in the head. *Id.* Additionally, the head wound was inflicted at close range. *Id.* In both of these cases, we affirmed the convictions and

the jury's determinations that the deaths were caused under circumstances manifesting extreme indifference to the value of human life.

While Price may be correct in his assertion that the evidence in *Porter* and *Williams* was sufficient for the jury to infer an intent on the part of the accused to kill the victim, he also cites other cases in which there was little, if any, evidence to support such an inference. In *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996), we noted that the appellant had admitted to every element of capital-felony murder during his trial testimony, with the possible exception of circumstances manifesting extreme indifference to the value of human life. We stated: "That element is provided by the mere fact of pointing a loaded gun at the deceased in the course of a robbery, whether or not there was an intent to shoot." *Id.* at 26, 931 S.W.2d at 80. We cited this holding in *Jordan v. State*, 356 Ark. 248, 147 S.W.3d 691 (2004), wherein the appellant claimed that the shooting was the result of an accidental discharge of the gun. We emphasized that the rule is operable even in the absence of an actual intent to shoot. *Id.* Finally, in *Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002), we expanded the rule in holding that the appellant's mere act of pointing a loaded gun at another person during an argument was a manifestation of extreme indifference to the value of human life, regardless of whether there was an actual intent to shoot. In short, this court has concluded that evidence of an actual intent to kill is not required to establish circumstances manifesting extreme indifference to the value of human life. Thus, Price's assertion to the contrary is without merit.

According to Price's own testimony, he intentionally raised his gun and fired a shot. Three witnesses, Mark Harris, Terry Harris, and Tavio Garrison, testified that they observed Price lean out of the driver's side window and turn in the direction of the Harris vehicle. Therefore, even in light of Price's suggestion that the discharge of the gun was merely a warning shot, he cannot dispute that the shooting was deliberate. Moreover, he cannot and does not dispute that his act of firing the gun culminated in the death of Keith Harris. His actions evidenced an intent to engage in life-threatening activity against the occupants of the vehicle at which he fired. For these reasons, we will not disturb the jury's determination that Price caused the death of Keith Harris under circumstances manifesting extreme indifference to the value of human life.

Pursuant to Ark. Sup. Ct. R. 4-3(h), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Price, and no prejudicial error has been found.

Affirmed.