Cite as 2020 Ark. App. 560

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-19-945

| | | |
|---|---|---|
| BOYCE WILLIAMS | | **Opinion Delivered** December 9, 2020 |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR-18-1018] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE GRISHAM PHILLIPS, JUDGE |
| | | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

### N. MARK KLAPPENBACH, Judge

Appellant Boyce Williams was convicted by a jury in the Saline County Circuit Court of terroristic threatening, false imprisonment, residential burglary, and aggravated assault on a family or household member. He was sentenced to an aggregate term of one hundred years' imprisonment. On appeal, Williams challenges the sufficiency of the evidence supporting those convictions and alleges that the circuit court erred by not questioning a juror. We affirm Williams's convictions and remand to correct the sentencing order.

The victim, Mickie King, testified that she and Williams had dated off and on since April 2017 and that Williams had been verbally and physically abusive. King testified that on the night of Friday, October 19, 2018, she came home to find her house "ransacked" after Williams was supposed to get his belongings out of her house. She said that Williams

arrived later that night after she had gone to bed and that he locked her bedroom door, took her phone and keys, called her names, and hit her on the back of the head. On Saturday morning, King sent a text message to her daughter asking her to call 911. King said that she was scared and did not know where Williams was in the house. Corporal Michael Watson of the Haskell Police Department arrived, and King told him that she wanted Williams out of her house. Watson made him leave, and a recording of their interaction made by Watson's body camera was played for the jury.

King said that around one o'clock Sunday morning, her bedroom door flew open and Williams announced, "I'm back." King's minor son, AN, testified that he was awakened by a loud boom and saw Williams running up the stairs. When he heard yelling, he went upstairs to his mother's bedroom and saw her mattress pushed over. AN said that he told Williams to stop, and Williams replied that he was going to hit AN. Williams quickly apologized, however, and said he was about to leave, so AN went back downstairs.

After AN went back to bed, Williams closed the bedroom door and the abuse started again.[1] King described how Williams assaulted her over the course of the next five hours. She said that he straddled her and pulled hairs out of her nose with tweezers, hit her on the back of the head (she assumed this was so he did not leave bruises on her face), put a knife to her throat, cut her clothes off, and put a gun in her mouth. King said that Williams told her that she better be glad it was a BB gun and he had no BBs because otherwise he would kill her. Over the course of the five hours, King at times would "doze off" because she was

---

[1]King testified that AN takes medication to sleep and that it is hard to wake him up while on the medication.

sleep deprived after Williams had made her stay up at night with him earlier in the week. She said that Williams would flip the mattress over to throw her to the floor. King said that she was afraid for her life and asked Williams to stop and to let her leave, but he refused. King told him that if she was not at work by six that morning, her coworkers would come looking for her. He then called a friend to come pick him up "before I kill this stupid bitch."

At six o'clock when the friend arrived, Williams walked King downstairs, refused to let her tell AN she was leaving, and walked her to her car. Williams gave King her phone and keys and asked if she was going to call the police. King told him she would not, and Williams said that he was going to the store where she worked. King said that she held her phone down while she was driving and called 911 on speakerphone.

Tina Huber, King's coworker, testified that King came into the store and started crying and telling her what had happened. Not long after King got there, Williams came into the store. Both King and Huber testified that Williams told King that if she called the police, he would kill her and everyone around her. Corporal Watson arrived at the store after Williams left, but Williams then called the store. King spoke to him on speakerphone with Watson listening and recording. Watson testified that Williams admitted on the phone that he had slapped King in the face and put a BB gun in her mouth.

Williams testified that after he was made to leave King's home on Saturday morning, they talked on the phone and he thought she was going to come over to work things out. When she did not come over, he decided to walk to her house. He admitted that Corporal Watson told him not to go back to her house and that King had not invited him back.

3

Williams said that they argued in her bedroom, but he denied making any physical contact with King or threatening to kill her.

## I. *Sufficiency of the Evidence*

Williams challenges the sufficiency of the evidence supporting each of his four convictions. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Mason v. State*, 361 Ark. 357, 206 S.W.3d 869 (2005). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State, and only evidence supporting the verdict will be considered. *Id.*

A person commits the offense of terroristic threatening in the first degree if, with the purpose of terrorizing another person, the person threatens to cause death or serious physical injury or substantial property damage to another person. Ark. Code Ann. § 5-13-301(a)(1)(A) (Supp. 2019). Williams argues that there was insufficient evidence to support his conviction because he testified that his purpose in going to King's home was to resolve a conflict with her, not to terrorize her.

King testified that Williams physically assaulted her for a number of hours and threatened to kill her. Tina Huber testified that she heard Williams threaten to kill King. A person acts purposely with respect to his or her conduct or a result of his or her conduct when it is the person's conscious object to engage in conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1) (Repl. 2013). A criminal defendant's intent or state

4

of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Price v. State*, 347 Ark. 708, 66 S.W.3d 653 (2002). Because of the obvious difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his acts. *Id*. Accordingly, when considering the natural consequences of Williams's acts, the jury could presume that his threats were made with the purpose of terrorizing King. Substantial evidence supports his conviction.

A person commits the offense of false imprisonment in the first degree if, without consent and without lawful authority, the person knowingly restrains another person so as to interfere substantially with the other person's liberty in a manner that exposes the other person to a substantial risk of serious physical injury. Ark. Code Ann. § 5-11-103(a) (Repl. 2013). Williams cites his testimony that he did not assault, threaten, or restrain King, and he argues that her testimony is unreliable because she admittedly "dozed off" over the course of the five hours.

Williams's argument ignores King's testimony that he refused to let her leave her bedroom and that he hit her, put a BB gun in her mouth, and held a knife to her throat. Viewing the evidence in the light most favorable to the State, we hold that there is substantial evidence that Williams knowingly restrained King so as to interfere substantially with her liberty in a manner that exposed her to a substantial risk of serious physical injury.

A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann.

5

§ 5-39-201(a)(1) (Repl. 2013). Williams was accused of unlawfully entering King's home with the purpose of assaulting her. Both King and Corporal Watson testified that Williams had been told not to return to King's home, and Williams admitted on cross-examination that he had not been invited back. King testified that once Williams was inside her bedroom, he assaulted her over the course of five hours. Williams again relies on his own testimony, but viewing the evidence in the light most favorable to the State, substantial evidence supports the conviction.

A person commits aggravated assault on a family or household member if, under circumstances manifesting extreme indifference to the value of human life, the person purposely engages in conduct that creates a substantial danger of death or serious physical injury to a family or household member. Ark. Code Ann. § 5-26-306(a)(1) (Supp. 2019). Williams argues that his testimony proves he did not engage in conduct that would create a danger of any injury.

"Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102(21) (Repl. 2013). King testified that in addition to striking her with his hands, Williams put a gun in her mouth and held a knife to her throat. This testimony is sufficient to establish conduct that creates a substantial danger of serious physical injury. Accordingly, substantial evidence supports the conviction.

6

## II. *Questioning of Juror*

After the jury was selected but prior to the start of the trial, the court heard a motion in limine from the State. Thereafter, the defense stated for the record that Williams had rejected two plea offers of twenty and eighteen years that were to be served concurrently with a sentence he was already serving for a parole violation. After the terms of the plea offers were stated, the defense counsel and the bailiff called attention to a juror's presence in the courtroom. The court instructed the juror to leave the courtroom and stated to the parties that it would have to question the juror. A few moments later, the following discussion was had:

| | |
|---|---|
| THE COURT: | I'll question him if y'all want me to. If you think that it just calls attention to something then I won't. |
| PROSECUTOR: | I don't know what he heard. I mean he could of — |
| THE COURT: | I don't know if he heard anything, that's what I want to find out. |
| COURT REPORTER: | I don't think he had time to hear anything. |
| DEFENSE ATTORNEY: | I'm inclined not to draw attention to it. |
| THE COURT: | Okay. Then we'll just move on. |
| DEFENSE ATTORNEY: | Are you okay with that? |
| WILLIAMS: | Yes, sir. |

Williams now argues that although defense counsel did not request that the juror be questioned, the court erred in choosing not to question him because the juror "heard inadmissible, highly prejudicial information." We disagree. First, we note that a defendant cannot agree with a circuit court's ruling and then attack the ruling on appeal. *Roberts v.*

*State*, 352 Ark. 489, 102 S.W.3d 482 (2003). We also disagree with Williams's contention that the issue falls under the third exception enumerated in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), which applies when a circuit court should intervene on its own motion to correct a serious error. This exception is limited to only those errors affecting the very structure of the criminal trial such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof. *White v. State*, 2012 Ark. 221, 408 S.W.3d 720. Williams argues that his fundamental right to a trial by jury was affected because the juror heard inadmissible information about the plea offers and the fact that he had prior convictions. Williams's arguments on appeal assume that the juror heard inadmissible evidence, but that was not at all clear among those present in the courtroom.

We have described the third *Wicks* exception as being applicable in situations where the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to correct the error. *Gaines v. State*, 2010 Ark. App. 439. We do not find that the exception applies in this case where the defense affirmatively declined the court's offer to have the juror questioned about what he potentially overheard.

### III. *Sentencing Order*

Although we affirm Williams's convictions, we note that there is a clerical error in the sentencing order that must be corrected. Williams was charged and sentenced as a habitual offender with four or more prior felony convictions pursuant to Arkansas Code Annotated section 5-4-501(b) (Supp. 2019). However, the sentencing order provides that for each of his convictions, he was sentenced as a habitual offender under Arkansas Code Annotated section 5-4-501(a) (more than one but fewer than four prior felonies). A circuit

8

court is free to correct a clerical error to have the judgment speak the truth. *Carter v. State*, 2019 Ark. App. 57, 568 S.W.3d 788. Accordingly, we affirm Williams's convictions but remand to the circuit court with instructions to correct the sentencing order. *See id.*

Affirmed; remanded to correct sentencing order.

HIXSON and BROWN, JJ., agree.

*James Law Firm*, by: *Nickolas W. Dunn* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.