Cite as 2026 Ark. App. 150

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-25-141

| | | |
|---|---|---|
| DEDRICK BRIGANCE | | Opinion Delivered March 4, 2026 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. 60CR-23-2645] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE KAREN D. WHATLEY, JUDGE |
| | | AFFIRMED |

**CASEY R. TUCKER, Judge**

Dedrick Brigance appeals his conviction of second-degree murder with a firearm enhancement in Pulaski County Circuit Court. He raises two points on appeal: (1) his conviction of second-degree murder is not supported by sufficient evidence and (2) pursuant to Arkansas's stand-your-ground law, the circuit court should have instructed the jury that he did not have a duty to retreat before using deadly force to defend himself and others. We affirm.

On May 12, 2023, Brigance's niece, Kieandra Brigance, and her boyfriend, Quincy Carter, drove to North Little Rock from Memphis, Tennessee, in order for Kieandra to engage in prostitution with customers with whom she or Quincy had connected online. Quincy and Kieandra checked into room 209 at the Rest Inn. Once ensconced in their room, Quincy left, and Kieandra was joined by a prostitute named Terranika Poplar (Lele)

because Kieandra's customer had arranged for a threesome. Lele was dating one of Kieandra's uncles, Cedrick Crutcher, who is Brigance's brother.

The girls' customer, Jeremiah Broadus, arrived at the room, was welcomed in, and paid the girls in advance for their services. Shortly after the three began to engage in the planned activity, Broadus asked to perform oral sex on Kieandra, and she refused. According to Kieandra's trial testimony, Broadus became furious and called off the deal, demanding the return of his money. When the girls refused to refund Broadus's money, he pulled a gun on them. After the girls returned his money, Broadus continued to point the gun at them. According to Kieandra, she was able to call Quincy and leave the line open so he could hear what was happening in the room. She thought that Lele might have contacted someone as well but was not sure.

A short time later, Quincy and Brigance arrived outside the room. Kieandra testified that she could hear someone trying to open the door, but the key would not work. The door then opened, and she could see Quincy. She began yelling, "He has a gun. He has a gun," referring to Broadus.

This is when the motel's security-camera footage, which was entered into evidence and shown to the jury, picks up the story. Both the video and the audio are clear. At approximately 1:00 a.m. on May 13, Quincy, followed by Brigance, walks up the exterior stairs at the Rest Inn to the door of room 209. Quincy tries repeatedly to use his key card and yells for someone to open the door, while Brigance stands out of the doorway's line of sight with his back against the wall of the next doorway and his gun in his left hand. When

the door of room 209 opens, Quincy enters, and Broadus exits the room. Broadus walks backward toward the stairway, still holding his gun, but it is hanging down at his side pointed at the ground. Broadus has his free hand outstretched and is saying "we good" as he continues to back toward the stairs. When Broadus reaches the top of the stairs and appears to be turning to exit down the stairs to leave, Brigance shoots him, pulling the trigger one time. At the time Brigance shoots Broadus, both of the girls are inside the room. Brigance and Quincy are standing in the doorway. Brigance is halfway inside the room. He and Quincy have both retreated inside the room before Broadus's body hits the ground.

Although Brigance squeezed the trigger only one time, the gun he was using had been altered to act as an automatic. It fired five rounds, hitting Broadus in his gun hand/wrist, both of his thighs, and his forehead. Brigance, Quincy and the girls gather the suitcases and belongings inside the hotel room and leave. Life-saving attempts conducted by law enforcement officers and EMTs who arrived on the scene were unsuccessful.

Brigance testified and did not deny that he shot Broadus. He claimed that he did so to defend himself and his niece. According to Brigance, he was with a woman at the Econo Lodge, which shared a parking lot with the Rest Inn, when he received a phone call from his brother Cedric. Cedric informed him that Kieandra was in danger with a man who had a gun. Brigance testified that he believed his niece to be in a dangerous situation with her boyfriend, Quincy. Brigance took the gun that belonged to the woman he was seeing that night and walked across the parking lot to the Rest Inn where he met up with Quincy. This was when Brigance realized that his niece was in a dangerous situation with someone other

3

than Quincy. He followed Quincy up the exterior stairway to room 209. Brigance put his back against the door of the room next to room 209 and checked his gun while Quincy worked on getting the door open. Brigance claimed that Broadus was raising his gun to shoot at them when Brigance fired on him. The video belies this claim. Brigance testified that his intention was to shoot Broadus's hand that was holding the gun.

The court instructed the jury on capital murder and the lesser-included offenses of first-degree murder, second-degree murder, and negligent homicide. The jury returned a verdict finding Brigance guilty of second-degree murder and that he committed the murder with a firearm. The court sentenced him to consecutive sentences of thirty-five years' imprisonment on the murder conviction and fifteen on the firearm enhancement. Brigance's timely appeal followed.

I. *Denial of Motion for Directed Verdict*

Brigance argues that the circuit court should have granted his motion for directed verdict because there was no evidence showing that he acted with extreme indifference to the value of human life as required for a conviction of second-degree murder. We disagree.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Lucas v. State*, 2023 Ark. App. 306, 669 S.W.3d 266. On review we look to whether the verdict is supported by substantial evidence. *Kellybrew v. State*, 2022 Ark. App. 266, 646 S.W.3d 391. In doing so, we view the evidence in the light most favorable to the verdict. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Woods v. State*,

4

2025 Ark. 9, 704 S.W.3d 301. The credibility of the witnesses and the weight to give their testimony are matters for the fact-finder, in this case the jury. *Dulle v. State*, 2019 Ark. App. 378, 582 S.W.3d 28. The jury may believe all or part of any witness's testimony. And, a jury is not required to put aside common sense; it may infer guilt from improbable explanations of incriminating conduct. *Id.* This court has recognized that "a person's intent or state of mind is rarely capable of proof by direct evidence and most often is inferred from the circumstances of the crime." *Id.* at 4–5, 582 S.W.3d at 30.

Pursuant to Arkansas Code Annotated § 5-10-103(a), a person commits second-degree murder if:

(1) The person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life; or

(2) With the purpose of causing serious physical injury to another person the person causes the death of any person.

Ark. Code Ann. § 5-10-103(a) (Repl. 2024). The jury in this case was instructed on subsections (1) and (2). The jury returned a guilty verdict on a general verdict form.

As to the culpable mental state provided in subsection (1), a person acts "knowingly" with respect to the person's conduct or attendant circumstances "when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist." Ark. Code Ann. § 5-2-202(2)(A) (Repl. 2024). A person acts knowingly with respect to a result of his or her conduct "when he or she is aware that it is practically certain that his or her

5

conduct will cause the result." Ark. Code Ann. § 5-2-202(2)(B). As to manifesting extreme indifference to the value of human life, this court has stated:

> Circumstances manifesting extreme indifference to the value of human life require "deliberate conduct that culminates in the death of another person." *Price v. State*, 373 Ark. 435, 439, 284 S.W.3d 462, 465–66 (2008). This necessitates actions on the part of the person that evidence a mental state and the intent required is the "intent to engage in the conduct that ultimately culminates in the death of a person, and not the intent to cause the death of a person." *Id.* at 441, 284 S.W.3d at 467.

*Dulle*, 2019 Ark. App. 378, at 5–6, 582 S.W.3d at 31.

In the present case, the evidence supports the conclusion that Brigance had the intent to engage in the conduct that caused the death of his victim. He took a loaded automatic handgun and went to the motel room where his niece was said to be in a predicament with a man who had a gun. Broadus, the man with the gun, began backing away from Brigance and party in the direction of the stairs as soon as he exited the motel room. As Broadus turned toward the stairs, Brigance raised his automatic weapon and fired directly at him. Brigance had the intent to fire the automatic weapon at Broadus, and that conduct resulted in Broadus's death. In other words, Brigance engaged in deliberate conduct that culminated in the death of another person. This meets the required state of mind for second-degree murder as provided by Arkansas Code Annotated § 5-10-103(a)(1). *See Sullivan v. State*, 2015 Ark. App. 514, at 4–5, 470 S.W.3d 312, 315, stating "the simple act of pointing a loaded gun at [the victim] was enough to satisfy the intent standard of second-degree murder."

As to Arkansas Code Annotated § 5-10-103(a)(2), Brigance testified that he purposely shot at Broadus's hand. Thus, he acted with the purpose to cause serious physical injury and

6

in so acting caused Broadus's death.  This meets the provisions of Arkansas Code Annotated

§ 5-10-103(a)(2). *See Hooks v. State*, 2013 Ark. App. 728, 431 S.W.3d 333.

The evidence in this case supports the verdict whether the jury found Brigance guilty

of second-degree murder under Arkansas Code Annotated § 5-10-103(a)(1) or (2).

II.  *Applicability of the Stand-Your-Ground Law*

For his second point, Brigance argues that the circuit court should have instructed

the jury in accordance with the stand-your-ground law.  In response, the State argues that

this argument is not preserved for appellate review.  The State is correct.

Prior to the commencement of trial, the attorneys conferenced with the circuit court

regarding the jury instructions, focusing on whether the jury should be instructed on a

defendant's right to stand his ground rather than retreat.  The right of a person to stand his

or her ground rather than retreat when acting in self-defense is found in Arkansas Code

Annotated § 5-2-607(b), which provides:

> (b)  A person is not required to retreat before using deadly physical force if the person:
>
> (1)  Is lawfully present at the location where deadly physical force is used;
>
> (2)  Has a reasonable belief that the person against whom the deadly physical force is used is imminently threatening to cause death or serious physical injury to the person or another person;
>
> (3)  Except as provided under § 5-2-606(b)(2)(B), is not the initial aggressor and has not provoked the person against whom the deadly physical force is used;
>
> (4)  Is not committing a felony offense of possession of a firearm by certain persons, § 5-73-103, with the firearm used to employ the deadly

7

physical force, unless the person is in or at the person's dwelling or in the curtilage surrounding the person's dwelling;

(5)   Is not engaged in criminal activity that gives rise to the need for the use of deadly physical force at the time the deadly physical force is used; and

(6)   Is not engaged in any activity in furtherance of a criminal gang, organization, or enterprise as defined in § 5-74-103.

Ark. Code Ann. § 5-2-607(b)(1)–(6) (Supp. 2023). The stand-your-ground law was created by Act 250 of 2021. At the time of Brigance's trial, there was no model jury instruction on this provision. The parties' arguments over whether Brigance had a duty to retreat, if possible, focused on subsection (4). Brigance was a felon in possession of a firearm and used that firearm in employing the deadly force that killed Broadus. Subsection (4) states that such factors form an exception to the right to stand your ground unless the shooter is at his dwelling or his curtilage. Brigance took the position that room 209 at the Rest Inn met the requirement of being his dwelling. The State argued the converse.

After extensive discussion, the court stated:

So this is where we are, it's 9:30 on the first day of trial. This is a complex issue that was presented to me this morning, well after jury instructions were submitted, which I reviewed, looked through yesterday, made notes, put all my stickies on, ready to move forward with trial today. At this point, what I can state is, that if the evidence supports it, I will allow a justification instruction. At this point in time, that's as far as I'm going. I'm not going to allow the state to argue in voir dire or opening or make a statement in voir dire or opening that Mr. Brigance did -- Mr. Brigance had a duty to retreat.

I may make the determination before the jury is instructed that Mr. Brigance had a duty to retreat, but even then, if I believe he's entitled to the justification instruction, he gets the justification instruction, which would then read, "a person is not justified in using deadly physical force if he knows that the use

8

of deadly physical force can be avoided with complete safety by retreating", but then we get into the second sentence, which leads us to more problematic issues. "However, he is not required to retreat if he is in his dwelling or was not the ~ and was not the initial ~ original aggressor."

The court offered the parties the opportunity to use the rest of the day to research the issue regarding the stand-your-ground provisions and provide a potential instruction before starting the trial the following day. Ultimately, the court and the parties agreed to take a break until later in the afternoon. Following the break, the court announced that it had researched the topic and had a "preliminary ruling" that it could make and then the parties could respond, or the parties could present their arguments first and then the court would make its preliminary ruling. The State responded that it was not opposed to Brigance receiving a justification instruction but that it wanted the instruction to include the duty to retreat. The State expressed that it did not want a continuance. Brigance's attorney then stated, "I can agree with that. I can — I don't want to ask for continuance. I mean, I've got a witness from out of state. He's already here, money's been spent, she's actually here, and getting her back may be a challenge. So the last thing I want to do is have to continue this." She then stated, "If this is what the State's going to go forward on though, I don't think I have a choice." The court stated it understood and then stated that under Arkansas Code Annotated § 5-2-607, even if the party cannot use the stand-your-ground provision, it can still have a justification defense. The court explained:

> What 5-2-607 did in 2021, under what everyone called during that session the "Stand-Your-Ground Bill", was they added the language which sets forth "you don't have to retreat if. . ." however, it did not say in the statute that if you ~

> if you have ～ if you have a duty to retreat, you can no longer use the justification defense. That is not what the law says.
>
> So I do believe that you can still get a justification instruction if the evidence points toward that and allows that by the time we get to jury instructions, even if you have a duty to retreat.
>
> So this morning ～ that ～ and I want to make sure I'm right in all of this, the defendant was arguing he was justified in using deadly physical force in defense of himself and of Ms. Brigance?

Brigance's attorney agreed. The court then explained that while it found the motel room was a dwelling, it was not Brigance's dwelling; and thus, being a convicted felon in possession of a firearm, Brigance would not be entitled to the stand-your-ground provision. The court presented a copy of its proposed instruction, which was AMI Crim. 2d 705, to the parties. In doing so, the court stated, "I'm more than happy to hear argument one way or the other after you have an opportunity to review it." It continued:

> So I know this changes ～ potentially changes the landscape for where, especially, the defense was anticipating being. I understand you do not want to ask for a continuance. I'm more than happy to move forward with the trial tomorrow; however, I understand the change in the landscape, and am willing to entertain a motion, if you want one.

Rather than make further argument or move for a continuance, both of which were offered by the court, Brigance's attorney stated, "We are good with this instruction." The State also agreed to the instruction. The court then stated that it would serve as the jury instruction on justification and would set the parameters under which they moved forward with voir dire and opening. The justification instruction to which the parties agreed contained the

10

provision stating, "A person is not justified in using deadly physical force if he knows that the use of deadly physical force can be avoided with complete safety by retreating."

There are two reasons, either one of which would suffice alone, that we do not reach the merits of this point on appeal. First, Brigance's counsel agreed with the circuit court's proposed instruction. When the court handed the parties its proposed instruction, it offered the parties an opportunity to present arguments after they reviewed it. Rather than argue her points and proffer an alternative instruction, counsel for appellant acquiesced to the court's instruction. A party cannot agree with the circuit court's proposed action and then raise its action as error on appeal. *Williams v. State*, 2020 Ark. App. 560, 613 S.W.3d 759. In *Williams*, the parties realized that one of the jurors was in the courtroom while the parties were discussing previous plea negotiations with the court. The court asked the parties whether they wanted it to question the juror regarding what he had heard. The parties agreed that they did not think the juror had heard the discussion and did not think the court needed to question him. On appeal, the appellant argued that the court erred in choosing not to question the juror. In rejecting the appellant's argument, the supreme court stated, "First, we note that a defendant cannot agree with a circuit court's ruling and then attack the ruling on appeal." *Id.* at 8, 613 S.W. 3d at 764. Similarly, in the present case, Brigance cannot complain of a jury instruction to which he agreed during a hearing before the circuit court.

Now for the second basis upon which we do not reach the merits of Brigance's argument. To preserve for appeal an argument that the circuit court erroneously instructed

11

the jury, the appellant must proffer a proposed alternative instruction to the court and include it in the record. There is no such proffered alternative instruction in the record in this case. As stated by the court in *Harris v. State*, 2023 Ark. 64, 663 S.W.3d 355,

> Further, we have held that "[i]t is the appellant's duty to present to this court a record sufficient to show that the circuit judge erred below. To preserve an objection to an instruction for appeal, the appellant must make a proffer of the proposed instruction to the judge. That proffered instruction must then be included in the record . . . to enable the appellate court to consider it. An instruction that is not contained in the record is not preserved and will not be addressed on appeal." *Robertson v. State*, 2009 Ark. 430, at 3, 347 S.W.3d 460, 462 (internal citations omitted).

*Id.* at 19, 663 S.W.3d at 367. As Brigance did not proffer an alternative instruction and include it in the record, we have no proposed instruction to review; thus, we are unable to address this issue on appeal.

Affirmed.

KLAPPENBACH, C.J., and HIXSON, J., agree.

*Ben Motal*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Chistian Harris*, Sr. Ass't Att'y Gen., for appellee.