Cite as 2026 Ark. 88

# SUPREME COURT OF ARKANSAS

**No.** CR–23–618

| | |
|---|---|
| MAURICIO ALEJANDRO TORRES<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** April 30, 2026<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-15-551]<br><br>HONORABLE BRAD KARREN, JUDGE<br><br><u>AFFIRMED</u>. |

**RHONDA K. WOOD, Associate Justice**

This is an appeal from a capital-murder conviction. Mauricio Torres was convicted of capital murder and first-degree battery. He received life in prison for murder and twenty years for battery. Torres makes two arguments on appeal—the capital-murder statute is unconstitutionally vague and the circuit court should have granted a mistrial based on the medical examiner's prejudicial comments. We reject both arguments and affirm.

This case has been before us twice already. The first time, Torres received a death sentence, but this court reversed and remanded for a new trial. *See Torres v. State*, 2019 Ark. 101, 571 S.W.3d 456. The second time, Torres was again convicted by a jury of capital murder. During sentencing, a witness leapt from the witness stand and charged toward Torres. The circuit court granted a mistrial of both the sentencing phase and the guilt phase. The State filed a petition for writ of certiorari, which we denied. *State v. Torres*, 2021 Ark. 22, at 11, 617 S.W.3d 232, 238.

The following facts emerged from this third jury trial in which the State sought the death penalty. We have limited our description of the horrendous facts as there is no sufficiency-of-the-evidence claim on appeal. The victim was Torres's six-year-old son, Maurice "Isaiah" Torres. Isaiah died in March 2015 after returning from a family camping trip to Missouri. During the trip, Isaiah complained about stomach pains, and Torres became angry because Isaiah was not helping clean up. Torres then beat Isaiah with a stick, took Isaiah inside the camper, and placed, or caused the placement, of a stick inside Isaiah's rectum. Isaiah fell on the stick, causing internal perforations.

The family left Missouri and drove home to Bella Vista, Arkansas. Isaiah was unresponsive, and paramedics were called. He was transported to the hospital, where he died. The medical examiner testified that Isaiah died from an abdominal infection caused by anal-rectal trauma. The perforation caused bacteria to seep into his abdomen, which caused infection, sepsis, and death. The medical examiner also testified that Isaiah had suffered from severe abuse. On his own and not responding directly to a question, the examiner said, "[This child-abuse case was] one of the worst ones in my career, and I've seen some pretty bad ones."

Defense counsel objected to this statement and moved for a mistrial. The circuit court sustained the objection but did not declare a mistrial. The court instructed the jury to disregard comments comparing the case to any others. The jury returned a guilty verdict. After the sentencing hearing, Torres received life in prison for murder and twenty years for battery.

Torres raises two issues on appeal. First, he argues that the definition of capital murder under which he was charged is unconstitutionally vague. We have consistently rejected this argument. Second, Torres argues that the court should have granted a mistrial when the medical examiner stated that this was one of the worst child-abuse cases he'd seen in his career. We hold that this drastic remedy was unnecessary because the State did not elicit the testimony; the court granted a limiting instruction; and the court noted that the testimony had no apparent impact on the jury.

Regarding his first issue, Torres challenges the following definition of capital murder:

Under circumstances manifesting extreme indifference to the value of human life, the person knowingly causes the death of a person fourteen (14) years of age or younger at the time the murder was committed if the defendant was eighteen (18) years of age or older at the time the murder was committed.

Ark. Code Ann. § 5-10-101(a)(9)(A) (Supp. 2025). Torres argues that the phrase "under circumstances manifesting extreme indifference to the value of human life" is unconstitutionally vague. Torres acknowledges that this court has consistently rejected this argument but urges the court to revisit those cases, overrule them, and find this part of the statute unconstitutional.

Statutes have a presumption of constitutionality. *Reinert v. State*, 348 Ark. 1, 4, 71 S.W.3d 52, 53 (2002). "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Anderson v. State*, 2017 Ark. 357, at 4, 533 S.W.3d 64, 67. As we held, the "under circumstances manifesting extreme indifference to the value of human life" language provides sufficient notice to both the accused and the jury about the conduct proscribed.

3

*Martin v. State*, 261 Ark. 80, 84, 547 S.W.2d 81, 83 (1977). The language does not require reasonable people to speculate as to its common understanding or application. *Id.* Indeed, we have defined this language to mean "deliberate conduct that culminates in the death of another person." *Price v. State*, 373 Ark. 435, 439, 284 S.W.3d 462, 465–66 (2008). To meet its burden, the State must show evidence of "a mental state on the part of the accused to engage in some life-threatening activity against the victim." *Id.*

We reaffirm our decision in *Martin* and other cases that have followed. The capital-murder statutes are not unconstitutionally vague. "It is impossible to avoid the use of general language in the definition of certain offenses." *Stacy v. State*, 2023 Ark. 176, at 7, 678 S.W.3d 773, 777. The definitions put the accused, the prosecutors, and the jury on notice of the prohibited conduct.

Torres's second argument on appeal also fails. He argues that the circuit court should have granted a mistrial because the medical examiner testified that the victim had suffered child abuse that was "one of the worst ones in his career" and that during that time he had "seen some pretty bad ones." The circuit court denied the motion for mistrial, observing that the jury did not appear to have been affected by the statement. The court also issued a limiting instruction.

Mistrial is an extreme and drastic remedy that is appropriate only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. *McClendon v. State*, 2019 Ark. 88, at 6, 570 S.W.3d 450, 454. A circuit court has wide discretion to grant or deny a motion for mistrial, and absent an abuse of that discretion, the circuit court's decision

4

will not be disturbed on appeal. *Id.* at 6–7, 570 S.W.3d at 454. To determine whether a circuit court abused its discretion in denying a mistrial motion, we consider factors such as whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *Id.* at 7, 570 S.W.3d at 454. An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice cannot be served by continuing the trial. *Id.*

We hold that the circuit court did not abuse its discretion. The State did not solicit the examiner's testimony about the severity of the child abuse. The court observed the jury's response and concluded that a limiting instruction was sufficient to cure any prejudice. The circuit court was in a better position to make this assessment than this court on a cold record. *See McClinton v. State*, 2015 Ark. 245, at 3, 464 S.W.3d 913, 914. Moreover, the jury had seen the autopsy photos and could certainly draw its own conclusions about the severity of the abuse.

Affirmed.

Special Justices MILTON FINE and MARY CAROLE YOUNG join.

BAKER, C.J., and BRONNI, J., not participating.

*Jeff Rosenzweig*; *George (Birc) Morledge*; *William O. James Jr.*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.